STEPHEN J. ERIGERO (SBN 11562)
TIMOTHY J. LEPORE (SBN 13908)
ROPERS, MAJESKI, KOHN & BENTLEY
3753 Howard Hughes Pkwy., Suite 200
Las Vegas, NV 89169
Telephone: (702) 954-8300
Facsimile: (213) 312-2001
Email: stephen.erigero@rmkb.com
timothy.lepore@rmkb.co

Attorneys for Defendant
THE LANGSDALE LAW FIRM, P.C.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL CUTTS,<br><br>                    Plaintiff,<br><br>v.<br><br>RICHLAND HOLDINGS, d/b/a<br>ACCTCORP OF SOUTHERN NEVADA,<br>A NEVADA CORPORATION, CALEB<br>LANGSDALE, ESQ. dba THE<br>LANGSDALE LAW FIRM P.C.; and<br>CLIFFORD MOLIN M.D. a/k/a Zeeba<br>Sleep Center<br><br>                    Defendant. | CASE NO.  2:17-CV-01525-JCM-PAL<br><br>**DEFENDANT THE LANGSDALE LAW<br>FIRM P.C.'S MOTION TO DISMISS<br>PLAINTIFF MICHAEL CUTTS'S<br>COMPLAINT**<br><br>[Fed. R. Civ. P. 12(b)(1) and 12(b)(6)]<br><br>Judge: James C. Mahan |

Defendant THE LANGSDALE LAW FIRM, P.C. ("Langsdale"), erroneously sued as

CALEB J. LANGSDALE, ESQ d/b/a THE LANGSDALE LAW FIRM, P.C., by and through its

counsel of record, ROPERS MAJESKI KOHN & BENTLEY, P.C., hereby respectfully moves

this Court, in accordance with Rule 12 of the Federal Rules of Civil Procedure ("FRCP"), to

dismiss Plaintiff Michael Cutts' ("Plaintiff") Complaint in this matter with prejudice.

//

//

//

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

1   Langsdale's Motion to Dismiss Plaintiff's Complaint (the "Motion") is based on the

2   following Memorandum of Points and Authorities; the pleadings and papers on file herein; and

3   any oral arguments that this Court will permit at a hearing on the matter.

4

5   Dated: June 23, 2017                          ROPERS, MAJESKI, KOHN & BENTLEY

6

7                                                 By: /s/ Timothy J. Lepore

                                                      STEPHEN J. ERIGERO

8                                                     TIMOTHY J. LEPORE
                                                      Attorneys for Defendant

9                                                     THE LANGSDALE LAW FIRM, P.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3      In ruling on this Motion, this Court must principally decide a single issue, all else being

4 peripheral: Is this Court allowed to set aside a Nevada state court judgment against Plaintiff? The

5 answer to this question is a resounding no because the jurisdiction to set aside a Nevada state

6 court judgment is not vested in federal district courts. The *Rooker–Feldman* doctrine is a well-

7 established jurisdictional rule that prevents lower federal courts from hearing de facto appeals

8 from state-court judgments. A de facto appeal arises when plaintiffs' claims in federal court are

9 inextricably intertwined with an earlier state court decision.

10      In this action, Plaintiff brings claims underneath the Fair Debt Collection Practices Action

11 against Langsdale based on a Nevada state court entering a default judgment against Plaintiff.

12 Specifically, Plaintiff avers that Richland Holdings, Inc. ("Richland"), a collection agency,

13 retained Langsdale to collect upon a debt Plaintiff owed to Clifford Molin, M.D. ("Molin"). In

14 collecting upon this debt, Plaintiff claims Richland and Langsdale misrepresented the amounts

15 lawfully owed to Molin in Richland's application for a default judgment. Based on this allegation,

16 Plaintiff claims Langsdale violated Section 1692f of the FDCPA, which prohibits debt collectors

17 using unfair or unconscionable means to collect any debt "not permitted by law." The Nevada

18 state court, however, already found the amounts were lawfully permitted and entered the default

19 judgment in Richland's favor. Thus, to find Langsdale liable based on this allegation for any

20 FDCPA claims or common law claims, this Court must second guess the Nevada state court's

21 decision, violating the *Rooker-Feldman* doctrine.

22      In addition to Plaintiff's Section 1692f claim, Plaintiff also alleges that Langsdale violated

23 Section 1692g by not sending a validation letter to Plaintiff. The Complaint, however, contains no

24 factual allegation that Langsdale every communicated with Plaintiff, which is needed to trigger

25 Langsdale's obligation to comply with Section 1692g. Rather, Plaintiff makes a conclusory

26 allegation that "Defendants attempted to collect the Debt and, as such, engaged in

27 "'communications" as defined in 15 U.S.C. § 1692a." But absent from this averment are factual

28 allegations that Langsdale actually communicated with Plaintiff. Plaintiff will not make this

simple representation to this Court because it is unfounded. Instead, Plaintiff is trying to convince this Court that by merely attempting to collect the debt Plaintiff owed, Langsdale had to communicate with Plaintiff.  This is not true, as Section 1692g exempts all pleadings from constituting "initial communications."

Finally, Plaintiff's additional claims against Langsdale for: (a) Deceptive Trade Practices ("DTPA") (N.R.S. 598), (b) Abuse of Process, (c) Negligent Misrepresentation, and (d) Civil Conspiracy fail a matter of law because Plaintiff pled them contingent on Langsdale violating the FDCPA. Moreover, Plaintiff has not alleged any facts making it plausible that Langsdale had an ulterior purpose in litigating the collection action, made a misrepresentation in connection with Plaintiff's business transactions, or conspired with Richland and Molin to commit an underlying tort. As such, this Court should dismiss Plaintiff's Complaint against Langsdale with prejudice.

## II.    STATEMENT OF PLAINTIFF'S ALLEGATIONS

Plaintiff filed his Complaint against Richland, Langsdale, and Molin (collectively "Defendants"), contending Defendants violated the FDCPA and certain Nevada state laws by attempting to collect upon a debt Plaintiff owed to Molin, which was later assigned to Richland. The Complaint states that Plaintiff incurred a debt amounting to $247.53 to Molin for the procurement of medical related services. ECF No. 1, ¶9; ECF No. 1, Ex. A. On October 3, 2016, Molin assigned the debt to Richland to pursue litigation against Plaintiff. ECF No. 1, ¶11; ECF No. 1, Ex. A. Subsequently, Richland retained Langdale as its counsel of record to pursue the litigation.  ECF No. 1, ¶12.

Langsdale then filed a complaint against Plaintiff in Nevada's Justice Court, case number 16C020177. ECF No. 1, ¶14. Plaintiff claims in that action, Defendants added a "contractual collection fee" of $137.27 to the principal debt Plaintiff owed Molin, which amounted to a total of $411.80. ECF No. 1, ¶13. Defendants subsequently filed an Application for Default Judgment in the action for $411.80. ECF No. 1, ¶16. The Nevada Justice Court granted the Application, entering a default judgment against Plaintiff for $411.80, plus court costs and reasonable attorney's fees ("Default Judgment"). ECF No. 1, ¶18.

Based on these allegations, Plaintiff claims the contractual fee was *unlawfully* added to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

Plaintiff's debt, thereby misleading the Court into granting the Default Judgment against Plaintiff. ECF No. 1, ¶¶13, 19.  Plaintiff also claims Defendants did not provide him with a validation of debt letter in compliance with section §1692(g) of the FDCPA. ECF No. 1, ¶14. To support this claim, Plaintiff makes a conclusory allegation that "Defendants attempted to collect the Debt and, as such, engaged in '"communications" as defined in 15 U.S.C. § 1692a(2)." ECF No. 1, ¶12.

III.   **ARGUMENT**

 A. **This Court Should Dismiss Plaintiff's FDCPA And State Law Claims Based On The Contractual Fee Because This Court Lacks Subject Matter Jurisdiction Over Reviewing The Default Judgment.**

  1. **Legal Standard Of Review**

Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1), any party may challenge a federal court's subject matter jurisdiction to hear the case before the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). On a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating subject matter jurisdiction. *See Sopak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).  Under 28 U.S.C. § 1257, Congress has limited appellate jurisdiction over state court judgments to the United States Supreme Court. 28 U.S.C. § 1257. Recognizing this, the Supreme Court has held that district courts may not adjudicate an action seeking to reverse or nullify a final state court judgment, commonly referred to as the *Rooker-Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 280 (2005). Nor may district courts adjudicate issues "inextricably intertwined" with those adjudicated by the state court. *Id*. at 286. A federal claim is inextricably intertwined with the merits of a state-court judgment if the federal claim succeeds only to the extent that the state court *wrongly decided the issues before it*. *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (*citing Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring) (emphasis added).

Essentially, the *Rooker-Feldman* doctrine bars a plaintiff's claim if the plaintiff: (1) lost in state court; (2) is complaining of injuries caused by the state court judgment;  (3) requests the district court to review and reject that judgment; and (4) had the state court judgment rendered against him or her before the district court proceedings commenced. *Hoblock v. Albany Cty. Bd.*

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

1  *of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citing *Exxon Mobil Corp*, 544 U.S. 280, (2005)).

2  Accordingly, Plaintiff's FDCPA and state law claims based on Langsdale allegedly obtaining a

3  Default Judgment containing an unlawful contractual fee meets all four requirements.

4  **2.      Plaintiff's FDCPA And State Law Claims Request This Court To
            Second Guess The Nevada State Court's Judgment That Richland
5            Was Entitled To The Contractual Fee.**

6  With regards to the first and fourth requirement, Plaintiff has pled the Default Judgment

7  was entered against him prior to initiating this current lawsuit. As such, Plaintiff lost in the

8  Nevada state court prior to filing this lawsuit before this Court. *Williams v. Cavalry Portfolios

9  Servs.*, LLC, No. SACV 10-00255 JVS, 2010 WL 2889656, at *3 (C.D. Cal. July 20, 2010) ("A

10 default judgment is equivalent to an adjudication on the merits and absent extrinsic fraud, it is not

11 grounds to preclude the application of the *Rooker–Feldman* doctrine.") (citing *Reusser v.

12 Wachovia Bank, N.A.*, 525 F.3d 855, 858 (9th Cir. 2008)).

13 Turning to the second and third requirement, Plaintiff claims the Nevada state court's

14 Default Judgment improperly allowed Defendants to recover a contractual fee that was unlawful,

15 and therefore Plaintiff was injured.  The *Rooker–Feldman* doctrine, however, precludes this claim

16 because it requires this Court to review the appropriateness of the Default Judgment. *Wilson v.

17 Asset Acceptance, LLC*, 864 F. Supp. 2d 642, 645 (E.D. Ky. 2012). Essentially, for Plaintiff to

18 prevail on his FDCPA claims based on the contractual fee, he must prove he is not liable for that

19 portion of the debt. *Williams v. Cavalry Portfolios Servs.*, LLC, No. SACV 10-00255 JVS, 2010

20 WL 2889656, at *4 (C.D. Cal. July 20, 2010).  But because this Court "is unable to review the

21 finding of the state court regarding Plaintiff's obligation to pay the debt, it lacks subject matter

22 jurisdiction" over these claims. *Moriarity v. Henriques*, No. 1:11-CV-01208-JLT, 2013 WL

23 1704937, at *6 (E.D. Cal. Apr. 19, 2013).

24 In a similar case, the Ninth Circuit has concluded Plaintiff's claims based on

25 misrepresenting the right to recover a contractual fee are barred by the *Rooker–Feldman*.  In

26 *Grant v. Unifund CCR Partners, LLC*, a debt collection agency sued the plaintiff in Los Angeles

27 County Superior Court for collection of unpaid credit card debt. *Grant v. Unifund CCR, LLC*, 577

28 F. App'x 693, 694 (9th Cir. 2014). The plaintiff did not respond to the complaint, and after a

motion, the Superior Court entered default judgment in favor of the collection agency. *Id*.

The plaintiff subsequently filed a complaint in the District Court for Central California against the debt collection agency for violating Sections 1692d through 1692f of the FDCPA. *Id*. at 694-95, fn. 2. Specifically, the plaintiff alleged: (1) she was never served with the summons and complaint in the state court action; (2) she did not owe the debt at issue in the state court action; (3) the debt collection agency garnished her money; and (4) that the Affidavits submitted in support of the request for default judgment were "false and fraudulent." *Id*. at 695. The district court, however, "held these allegations constituted a de facto appeal from [the plaintiff's] state judgment." *Id*. As such, "pursuant to the *Rooker–Feldman* doctrine, [the district court] could not entertain any claims premised on [these] alleged wrongs." *Id*. On appeal, the Ninth Circuit affirmed the district court's decision, holding that these allegations and claims "were subject to the *Rooker–Feldman doctrine*; therefore the district court lacked subject matter jurisdiction over them." *Id*. at 696.

Furthermore, the fact that Plaintiff is challenging Defendants' actions in seeking to collect the contractual fee is inconsequential to this Court's analysis. For example, in *Fleming v. Gordon & Wong Law Grp*., P.C., a law firm had applied to the Santa Clara County Superior Court for a Writ of Execution that contained interest charges on a prior judgment entered against the plaintiff. *Fleming*, 723 F. Supp. 2d 1219, 1220-21 (N.D. Cal. 2010). The Superior Court issued the Writ of Execution with the interest charges. *Id*. Subsequently, the plaintiff filed a separate action in federal court claiming the law firm violated the FDCPA "by seeking excess interest on [the] judgment already entered." *Id.* at 1223.

To escape the *Rooker-Feldman* doctrine, the plaintiff claimed she was not challenging whether she owed the debt, but the law firm's *actions* in seeking excess interest. *Id*. She also argued she was complaining of injuries caused by the law firm, not the state court's judgment. *Id*. The district court found these arguments unconvincing. *Fleming,* 723 F. Supp. 2d at 1223. Specifically, the district court concluded that:

> To evaluate [the plaintiff's] claim, the [c]ourt must determine the validity of the . . . debt recognized by the state court in the . . . Writ of Execution. Thus, adjudication of [the plaintiff's] FDCPA claim

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

would undercut the state court's judgment and constitute a de-facto appeal.

*Id*. Therefore, the claim constituted a de-facto appeal and was barred by the *Rooker–Feldman* doctrine. *Id*.[1]

Similarly, Plaintiff's Complaint attempts to escape the *Rooker-Feldman* doctrine by claiming as a result of Defendants' misrepresenting the amount of the debt, they were able to obtain a Default Judgment against Plaintiff which included sums that were unlawful. ECF No. 1, ¶19. But for this Court to entertain any claims based on this allegation, it would have to review the Default Judgment to determine whether the amounts stated therein were "lawful." *Riding v. Cach LLC*, 992 F. Supp. 2d 987, 994 (C.D. Cal. 2014) ("[T]o the extent that [the plaintiff's] FDCPA claims are premised on the proposition that [the plaintiff is] not liable for the debt, . . . those claims are barred by the *Rooker–Feldman* Doctrine.). In sum, Plaintiff is requesting this Court to become an appellate court and review a de facto appeal from the Default Judgment. This Court, therefore, lacks subject matter jurisdiction over Plaintiff's FDCPA and state law claims based on the validity of the contractual fee. (*Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003) (holding "once a federal plaintiff seeks to bring a forbidden de facto appeal . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought.")

**B.      This Court Should Also Dismiss Plaintiff's Section 1692g Claim And State Law Claims Because They Fail As A Matter Of Law.**

In addition to this Court lacking subject matter jurisdiction over Plaintiff's claims deriving from the contractual fee, Plaintiff failed to plead sufficient factual allegations to support his remaining claims.

**1.      Legal Standard of Review**

Federal Rule of Civil Procedure 8(a) provides the basic standard for federal pleadings: A pleading that states a claim for relief must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." (Fed R. Civ. P. 8(a)). The function of a complaint is

---

[1] Moreover, in a further attempt to avoid dismissal, plaintiff contended her FDCPA claim was separate from the state court judgment because she was seeking statutory damages independent of the debt owed. Id. But again, the district court shot down this argument because her recovery was still premised on overturning the state court's judgment. *Id.*

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether "there is a lack of cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

In determining what constitutes sufficient facts, the Supreme Court has stated that a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Stated in another fashion, the factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Consequently, to survive a motion to dismiss, a plaintiff must plead something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" (*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). And although a court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true, (*Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)), this rule does not apply to "a legal conclusion couched as a factual allegation." (*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

> **2.    This Court Should Dismiss Plaintiff's Claim That Langsdale Violated Section 1692(g) Because Plaintiff's Did Not Plead Langsdale Ever Communicated With Him.**

After this Court dismisses Plaintiff's FDCPA claims based on the contractual fee, Plaintiff's sole claim underneath the FDCPA is for Section 1692g(a).  As stated above, Plaintiff makes a conclusory allegation that "Langsdale failed to provide Plaintiff with a validation of debt letter in compliance with Section 1692(g) of the FDCPA." This allegation could either mean Plaintiff received a non-compliant validation letter from Langsdale, or Plaintiff did not receive a required validation letter from Langsdale. Plaintiff therefore cannot simply allege Langsdale failed to provide Plaintiff with a validation of debt letter in compliance with Section 1692(g). *E.g.*

1   *Chavez v. Access Capital Servs., Inc*., No. 1:13-CV-01037 AWI, 2014 WL 2716876, at *4 (E.D.

2   Cal. June 16, 2014) ("Plaintiff's claim that the [d]efendant did not provide a written notice as

3   required by § 1692g is not supported by specific factual allegations so as to state a plausible claim

4   to relief.").

5          But since Plaintiff failed to identify defects contained in any validation letter they

6   received, Langsdale assumes Plaintiff is claiming he never received a validation letter from

7   Langsdale according to Section 1692g(a). Section 1692g(a) states that "[w]ithin five days after

8   the initial communication with a consumer in connection with the collection of any debt, a debt

9   collector shall . . . send the consumer a written notice containing" the amount of the debt, the

10  name of the creditor to whom the debt is owed, and a number of statements regarding a

11  consumer's right to validate the debt. *See* 15 U.S.C. § 1692g(a)(1)–(5) (emphasis added). This

12  written notice is commonly referred to as a validation letter. The FDCPA, however, specifically

13  excludes "communication[s] in the form of a formal pleading in a civil action" from qualifying as

14  an initial communication under Section 1692g. 15 U.S.C. § 1692g(d). Therefore, formal

15  pleadings do not trigger the validation requirements outlined in Section 1692g(a). *Todorov v.*

16  *Easy Loans Corp*., No. 2:13-CV-01264-MMD, 2014 WL 2803423, at *6 (D. Nev. June 19, 2014).

17         Accordingly, Plaintiff needed to plead Langsdale communicated with Plaintiff to trigger

18  Langsdale's obligation to send a written validation letter. Plaintiff, however, omitted this

19  allegation in his Complaint. Nowhere in the Complaint does Plaintiff allege Langsdale

20  communicated with him. Instead, Plaintiff makes a conclusory allegation that Langsdale

21  attempted to collect the Debt and, as such, engaged in communications as defined in 15 U.S.C. §

22  1692a(2). This allegation is not factual. Rather, Plaintiff wants this Court to infer that every debt

23  collection effort results in communications with a consumer. This is not true.

24         First, the FDCPA specifically excludes "communication[s] in the form of a formal

25  pleading in a civil action" from qualifying as an initial communication under Section 1692g. Thus,

26  a debt collector can file a complaint and obtain a default judgment without *every triggering*

27  *Section 1692g*. Second, the Ninth Circuit has held communications with a debtor's attorney do

28  not constitute actionable "communications" underneath the FDCPA. *Guerrero v. RJM*

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

*Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). Therefore, a debt collector could litigate an entire case against a debtor without every communicating with the debtor if the debt collector only communicates with the debtor's attorney. As such, Plaintiff's allegation that Langsdale attempted to collect the debt, and therefore engaged in a "communications," is nothing more than a conclusory allegation not supported by factual allegations making it plausible Langsdale violated Section 1692g(a).

Excluding this conclusory allegation, the only factual allegations related to Langsdale is that he: (a) filed suit against Plaintiff, i.e. filed a complaint against Plaintiff, and (b) submitted an Application for Default Judgment in that suit. ECF No. 1, ¶¶13, 16. Plaintiff does not allege he received these documents, but even if he did, they constitute formal pleadings and do not qualify as "initial communications."  In construing the meaning of "formal pleadings," courts have concluded any document filed with a court in connection with a civil proceeding constitute "formal pleadings," such as complaints. *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213 (2d Cir. 2017) ("[Congress] adopted a broad exclusion that, on its face, applies to any communication *forming any part of a pleading*") (emphasis added); *e.g. Todorov*,  2014 WL 2803423, at *6 ("[A][c]omplaint, however, does not qualify as an "initial communication" under § 1692g(d), and it does not trigger the validation requirements outlined in § 1692g(a)-(b).")

This also includes applications to obtain and enforce judgments. For example, the Ninth Circuit Bankruptcy Court has held that a proof of claim filed in a bankruptcy action constitutes a formal pleading under Section 1692g. *In re McCarther-Morgan, No. ADV.* 07-90654, 2009 WL 7810817, at *12 (B.A.P. 9th Cir. Jan. 27, 2009).  And in *Taylor v. Heath W. Williams, L.L.C.*, the Northern District of Georgia held that a complaint initiating a wage garnishment action did not constitute an initial communication because it was a "formal pleading." *Taylor*, 510 F. Supp. 2d 1206, 1213 (N.D. Ga. 2007). Accordingly, Langsdsale never had any "initial communications" with Plaintiff to trigger Langsdale's obligation to comply with Section 1692g; this Court should, therefore, dismiss Plaintiff's Section 1692g claim.

**3.     Plaintiff's Second, Third, And Fifth Claims Of Relief Against Langsdale Fail As A Matter Of Law Because Plaintiff Pled Them Contingent On Langsdale Violating The FDCPA.**

In an attempt to widen their claim to damages, Plaintiff alleged Langsdale engaged in deceptive trade practices, abused the legal process, and conspired with Richland and Molin to damage Plaintiff. Notwithstanding, Plaintiff has pled nothing more than legal conclusions to support these claims and admit these claims are contingent on Langsdale violating the FDPCA. For example, Plaintiff alleges in his Abuse of Process claim that "Defendants commenced and/or prosecuted legal proceedings against Plaintiff for the ulterior purpose of collecting unlawful rates of interests and unlawful fees in violation of the FDPCA." Similarly, Plaintiff stated for his DTPA claim that "Defendants engage[d] in unfair or deceptive acts or practices . . . through . . . debt collection and litigation activities[.]" And finally, Plaintiff alleged Defendants committed civil conspiracy by undertaking a "concerted action with the intent to commit the Collection Fee Violations and the 1692(g) Violations." Consequently, Plaintiff has pled his claims for deceptive trade practices, abuse of process, and civil conspiracy based on Langsdale violating the FDCPA. This Court should therefore dismiss Plaintiff's Second, Third, and Fifth claims for relief with prejudice because Plaintiff's claims against Langsdale under the FDCPA fail as a matter of law.

**4.     Plaintiff's Third Claim For Relief Under Nevada's DTPA Fails As A Matter Of Law Because The FDCPA Does Not Regulate The Sale Or Lease Of Goods Or Services.**

Plaintiff also alleged Langsdale violated Nevada's DTPA by engaging in unfair and deceptive debt collection and litigation activities. Again, because Plaintiff's allegations contain nothing more than ultimate legal conclusions, Plaintiff does not specify what section of the DTPA Langsdale allegedly violated. However, since Plaintiff pled his DTPA claim contingent on Langsdale violating the FDCPA, Langsdale assumes Plaintiff is bringing his DTPA action based on N.R.S. Section 598.0923, which contains a "borrowing" provision. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012)

That section of the DTPA states that "a person engages in a 'deceptive trade practice' when in the course of his business or occupation he or she knowingly ... [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services." N.R.S. Section

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

598.0923(3). Nevada has provided victims of consumer fraud, defined as a "deceptive trade practice", a private right of action under this section. N.R.S. 41.600. Accordingly, for Plaintiff to bring this action against Langsdale for violations of the FDCPA, this Court must conclude that the FDCPA relates to the sale or lease of good or services. It does not.

The FDCPA's Congressional findings and declaration of purpose makes it abundantly clear that the FDCPA does not relate to the purchasing or leasing of goods or services, but instead regulates debt collection practices. 15 U.S.C. § 1692. Specifically, the FDCPA declares "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors[,]" and the FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors . . . ." 15 U.S.C. § 1692. Missing from this statement is any declaration that the FDCPA is concerned with the selling or leasing of goods or services.

The FDCPA also does not restrict its definition of "consumer," and thus standing under the FDCPA, to individuals who purchased or leased goods or services. Instead, "consumer" is defined to mean "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a. Again, this illustrates the FDCPA is concerned with regulating the collection of debts, not the sale or lease of good or services. *E.g. Lachi v. GE Capital Bank*, 993 F. Supp. 2d 1228, 1232 (S.D. Cal. 2014) (restricting standing under the FDCPA to individuals who are allegedly obligated to pay a debt.)

Moreover, in *Mallory v. McCarthy & Holthus, LLP*, this District was presented with this same issue and found that consumers may not bower the FDCPA to allege a claim under DTPA. *Mallory*, No. 2:14-CV-00396-KJD, 2015 WL 2185413, at *3 (D. Nev. May 11, 2015). In analyzing the issue, the court stated a debt collector "is not offering [a consumer] any good or service; rather, it is attempting to recover on the [consumer's] pre-existing debts." *Id*. Thus, a debt collector does not engage in a "deceptive trade practice" under 598.0923(3). *Id*. This District also succinctly stated in *Peatrowsky v. Persolve* that a consumer's "NDTPA claim [based on the FDPCA] is an attempt to shove . . . square facts into [a] round hole of Nevada law." *Peatrowsky*,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

No. 2:12-CV-00935-JAD, 2014 WL 1215061, at *5 (D. Nev. Mar. 24, 2014).[2]  As such, this Court should dismiss Plaintiff's Third Claim for Relief with prejudice.

> **5.     Plaintiff's Second Claim For Relief For Abuse of Process Fails Because Plaintiff Did Not Plead Sufficient Factual Allegations Making It Plausible That Langsdale Had An Ulterior Motive.**

Under Nevada law, to support an abuse of process claim against Langsdale, Plaintiff had to plead that Langsdale had: (1) an ulterior purpose other than resolving a legal dispute, and (2) Langsdale engaged in "a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Land Baron Inv. v. Bonnie Springs Family LP*, 131 Nev. Adv. Op. 69, 356 P.3d 511, 519 (2015), *reh'g denied* (Nov. 24, 2015), *reconsideration en banc denied* (Jan. 22, 2016). Importantly, Plaintiff "must provide facts, rather than conjecture, showing that [Langadale] intended to use the legal process to further an ulterior purpose." *Id*. Furthermore, the tort requires a "'willful act,' and . . . 'merely filing a complaint and proceeding to properly litigate the case does not meet this requirement.'" *Id; e.g. Absolute Bus. Sols., Inc. v. Mortg. Elec. Registration Sys., Inc*., No. 215CV01325RCJNJK, 2016 WL 4149970, at *6 (D. Nev. Aug. 3, 2016).

Applying this standard here, Plaintiff did not allege any facts making it plausible that Langsdale had an ulterior purpose in proceeding with the collection action. Instead, Plaintiff avers that Defendants commenced the lawsuit with the "ulterior purpose" to collect monies from Plaintiff that Defendants are not legally entitled to recover. ECF No. 1, ¶37. But this conclusory allegation cannot support the contention that Langsdale had an "ulterior motive." This is because collecting the debt from Plaintiff was the purpose of Richland's collection action. Moreover, the majority of contractual disputes derive from plaintiffs claiming they are owed money, which the defendants dispute plaintiffs are legally entitled to recover. Thus, Plaintiff's allegations represent nothing more than the factual contention underpinning contractual disputes, not an "ulterior motive."

Plaintiff also failed to plead any facts to support the proposition that Langsdale engaged in

---

[2] That court also dismissed the NDTPA claim because under Nevada law, "securing or collecting debts" do not constitute "doing business," which is an element a consumer must prove to recover under the "borrowing provision" contained in Nevada's DTPA. *Id.*; see N.R.S § 80.015 ("the following activities do not constitute doing business in this State: . . . [s]ecuring or collecting debts."); *See also Middleton v. Cavalry Portfolio Servs*., LLC, No. 216CV01760MMDPAL, 2017 WL 969182, at *4 (D. Nev. Mar. 13, 2017).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

a willful act not proper in the regular conduct of the proceeding. *Gray v. Receivables Performance Mgmt.*, No. 2:10-CV-01240-GMN, 2011 WL 2433812, at *3 (D. Nev. June 13, 2011) ("[C]laimants must include some allegation of abusive measures taken after the filing of the complaint in order to state a claim.") (*citing LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev.2002).) Thus, to allow Plaintiff's claim to go forward on these allegations would encourage parties to forgo litigation and resort to other means to collect upon the debt, an absurd result this Court should avoid. As a result, this Court should dismiss Plaintiff's Second Claim for Relief with prejudice.

> **6. This Court Should Also Dismiss Plaintiff's Fifth Claim For Relief For Civil Conspiracy With Prejudice Because Plaintiff Has Not Alleged Sufficient Factual Allegations That Langsdale Conspired To Commit An Underlying Tort.**

Actionable civil conspiracy in Nevada "arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. Adv. Op. 78, 335 P.3d 190, 198 (2014) (citation omitted). Thus, to establish a claim for civil conspiracy, Plaintiff must prove: (1) "the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort." *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1278 (D. Nev. 2014) (*citing GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11, 15 (2001).) To support this claim, Plaintiff alleges Langsdale undertook a concerted action with the other defendants with the intent to violate the FDCPA. There are two issues with this allegation that cause this claim to fail as matter of law.

Principally, Plaintiff's conspiracy allegations are conclusory. Again, there are no factual allegations in Plaintiff's Complaint that the defendants conspired and agreed to commit a tort. At most, Plaintiff alleges Molin assigned a debt to Richland, who engaged Langsdale to collect upon that debt. Omitted from this, though, are any factual allegations that the defendants intentionally agreed between each other to violate the FDCPA to collect monies not owed to them to specifically damage Plaintiff. *E.g. On Demand Direct Response, LLC v. McCart–Pollack*, No. 215CV01576MMDVCF, 2016 WL 5796858, at *3 (D. Nev. Sept. 30, 2016) (finding that despite

1  75 pages of allegations, the plaintiffs did not plead sufficient facts to state a civil conspiracy

2  claim.)

3       Additionally, Plaintiff's civil conspiracy claim also fails as a matter of law because the

4  commission of an underlying tort is necessary to support this claim. Here, Plaintiff has pled his

5  civil conspiracy claim based on Langsdale violating the FDCPA. But as Langsdale demonstrated

6  above, Plaintiff does not have a viable claim against Langsdale under the FDPCA. Thus, this

7  Court should also dismiss Plaintiff's Fifth Claim for Relief with prejudice.

8         **7.**    **This Court Should Also Dismiss Plaintiff's Fourth Claim For Relief**

               **For Negligent Misrepresentation Because Plaintiff Did Not Enter Into**

9                 **A Business Transaction With Langsdale.**

10       Plaintiff's Fourth Claim for Relief claims Langsdale negligently misrepresented the

11  lawfulness of the collection fee, and therefore induced Plaintiff and the Court "to act in reliance

12  upon the misrepresentation." ECF No. 1, ¶48. Putting aside the absurdity of this claim, Nevada

13  has adopted the definition contained in the Second Restatement of Torts for negligent

14  misrepresentation. In Nevada, a claim for negligent misrepresentation requires Plaintiff to prove:

15  (1) Langsdale, in the course of his profession, (2) failed to use reasonable care and supplied false

16  information in guiding Plaintiff in his business transactions, (3) which Plaintiff justifiable relied

17  upon to his financial detriment. *Barmettler v. Reno Air, Inc*., 114 Nev. 441, 449 (1998). Put

18  another away, Plaintiff's negligent misrepresentation claim only applies to misrepresentations

19  Langsdale made in offering advice to Plaintiff related to his business dealings. Thus, if there is no

20  business transaction involved, Plaintiff cannot allege a negligent misrepresentation claim. *Id.*

21       Here, the negligent misrepresentations Langsdale allegedly made had no connection to

22  Plaintiff's business transactions, but were related to past debts owed. Simply stated, Plaintiff's

23  misrepresentations claims are based on Langsdale's litigation conduct. Langsdale was not

24  providing Plaintiff guidance, but litigating a case against Plaintiff. Plaintiff was not Langsdale

25  client, and Plaintiff was not seeking business advice from Langsdale related to any commercial

26  transaction. As such, Plaintiff cannot allege a claim against Langsdale for allegedly

27  misrepresenting the collection fee was "lawful."

28       Moreover, "this federal district recognizes that negligent representation sounds in fraud,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

1   triggering the requirement under Rule 9(b) that the circumstances constituting fraud or mistake

2   must be stated with particularity." *Guerrero-Madrid v. Fed. Home Loan Mortg. Corp.*, No. 2:13-

3   CV-00432-APG, 2013 WL 5970730, at *4 (D. Nev. Nov. 8, 2013). Applying this standard,

4   Plaintiff has not plead any particular facts regarding what information Langsdale submitted in the

5   underlying action that he relied upon, or explain how the misrpresentations caused them

6   pecuniary loss in a business transaction. *Cramer v. Bank of Am.*, No. 66132, 2015 WL 4611936,

7   at *2 (Nev. July 31, 2015). Thus, this Court should dismiss Plaintiff's Fourth Claim for Relief

8   with prejudice.

9   **IV.     CONCLUSION**

10          For the reasons stated above, Langsdale respectfully request this Court to dismiss with

11   prejudice Plaintiff's FDCPA and state law claims against Langsdale based on misrepresenting the

12   contractual fees because this Court lacks subject matter jurisdiction over reviewing the Default

13   Judgment. Langsdale also request this Court to dismiss with prejudice Plaintiff's Section 1692g

14   claim and state law claims with prejudice because Plaintiff cannot plead any facts to state a claim

15   to relief against Langsdale.

16

17   Dated:     June 23, 2017                    ROPERS, MAJESKI, KOHN & BENTLEY

18

19                                              By: /s/ *Timothy J. Lepore*
                                                    STEPHEN J. ERIGERO
20                                                  TIMOTHY J. LEPORE
                                                    Attorneys for Defendant
21                                                  THE LANGSDALE LAW FIRM, P.C.

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

4820-4343-2011.1                            - 17 -

1

## CERTIFICATE OF SERVICE

2

3       In accordance with Rule 5(b) of the Federal Rules of Civil Procedure, and Local Rule IC

4   4-1(d), I hereby certify that on the 23rd day of June 2017, a copy of **DEFENDANT THE**

    **LANGSDALE LAW FIRM P.C.'S MOTION TO DISMISS PLAINTIFF MICHAEL**
5
    **CUTTS'S COMPLAINT** was served on all CM/ECF registered parties by filing and serving the
6
    same using the CM/ECF filing system.
7

8                               /s/ *Timothy J. Lepore*
                        _____
9                               TIMOTHY J. LEPORE
                           An employee of Ropers Majeski Kohn
10                                & Bentley, P.C.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas