VERNON A. NELSON, JR., ESQ.
Nevada Bar No.: 6434
MARGARET G. FOLEY, ESQ.
Nevada Bar No.:  7703
THE LAW OFFICE OF VERNON NELSON
9480 S. Eastern Avenue, Suite 244
Las Vegas, Nevada 89123
Tel.: 702-476-2500
Fax.: 702-476-2788
Email: vnelson@nelsonlawfirmlv.com
*Attorneys for Michael Cutts*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MICHAEL CUTTS,

              Plaintiff,

v.

RICHLAND HOLDINGS, INC. d/b/a
ACCTCORP OF SOUTHERN NEVADA, a
Nevada Corporation; CALEB J.
LANGSDALE, ESQ. dba The LANGSDALE
LAW FIRM, P.C.; and CLIFFORD MOLIN,
M.D. a/k/a Zeeba Sleep Center

              Defendants.

Case No.:  2:17-cv-01525-JCM-PAL

**PLAINTIFF'S OPPOSITION TO
LANGSDALE LAW FIRM P.C.'s
MOTION TO DISMISS COMPLAINT**

I.      **INTRODUCTION**

      Defendant Langsdale's Motion to Dismiss Plaintiff Michael Cutts' Complaint [ECF 9] ("Motion to Dismiss") should be denied.  It is composed of shopworn and boilerplate arguments, the centerpiece of which is a meritless *Rooker-Feldman* argument, for which sanctions are warranted. Sprinkled elsewhere in the Motion to Dismiss are brief arguments about *Twombly* and rhetorical questions about what Plaintiff is not alleging.  The final result is a bloated motion that probably does not assist the Court in addressing the case at bar.  Any defects that Langsdale alleges exist in Plaintiff's Complaint are subject to the federal courts' liberal policy permitting amendment.  If the Court sees fit to dismiss any part of Mr. Cutts' Complaint, then leave to amend should be freely given.

THE LAW OFFICE OF VERNON NELSON
ATTORNEY AT LAW

1  Plaintiff also seeks an award of attorneys' fees and costs for having to defend against Langsdale's
2  multiplicity of proceedings under 29 U.S.C. Section 1927.

3  **II.    STATEMENT OF FACTS**

4  Plaintiff Michael Cutts alleges that the named Defendants committed numerous violations of
5  the FDCPA, particularly "Collection Fee Violations," "§ 1692(g) Violations," and
6  a"Misrepresentation Violation."  Plaintiff also brings causes of action for Abuse of Process, Depective
7  Trade Practices, Misrepresentation, and Civil Conspiracy.  *See generally* Complaint [ECF 1] at ¶¶ 27-
8  54.

9  Notably, in light of Langsdale's recurring, yet empty, *Rooker -Feldman* arguments discussed
10  below, Plaintiff does not allege that the Court committed any illegal act.  Plaintiff does not seek to
11  undo the state court judgment and Plaintiff is not seeking relief from the state court judgment.

12  **III.   STANDARDS OF REVIEW**

13  **A.    DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION**

14  Per Rule 12(b)(1), a party may seek to dismiss an action for lack of subject matter jurisdiction.
15  In reviewing a motion, "the court is not restricted to the face of the pleadings and may review any
16  evidence, such as declarations and testimony, to resolve factual disputes concerning the existence of
17  jurisdiction."  *Edward & Marjorie Austin Unitrust v. U.S. Mortg. Corp.*, 2007 U.S. Dist. LEXIS
18  72921, *3 (D. Nev. Sept. 27, 2007).  The Court must dismiss a case if it lacks subject-matter
19  jurisdiction.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

20  **B.    DISMISSAL FOR FAILURE TO STATE A CLAIM**

21  In reviewing a Rule 12(b)(6) motion, the Court must consider all allegations of material fact
22  stated in the complaint as true.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007).
23  The Court must construe the facts in the light most favorable to the nonmoving party. *Id.* The Court
24  should not dismiss a complaint "unless it appears beyond doubt that plaintiff can prove no set of facts
25  in support of his claim which would entitle him to relief."  *Rodriguez v. Panayiotou*, 314 F.3d 979,
26  983 (9th Cir. 2002).  The Court's review is generally limited to a review of the Complaint; but it may
27  consider and take judicial notice of facts that are not subject to a reasonable dispute. *Daniels-Hall v.*
28  *Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

## IV.     LEGAL ARGUMENT

### A.     NONE OF PLAINTIFF'S CLAIMS ARE BARRED BY *ROOKER-FELDMAN*

Langsdale argues first that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.[1]  In making this argument, Langsdale conspicuously ignores the substantial body of on-point District of Nevada law on this issue, which makes clear that *Rooker-Feldman* does not apply here.  As Judge Jones stated in the *Means* case, Langsdale's approach is sanctionable.  Langsdale continues to make this rejected argument and should be subject to sanctions.

In *Means v. Intelligent Bus. Solutions, Ltd.*, 2015 U.S. Dist. LEXIS 41932 (D. Nev. Mar. 31, 2015), Judge Jones of the District of Nevada recognized Langsdale's argument that an FDCPA claim is barred by *Rooker-Feldman* abstention to be fallacious.  The *Means* court stated pointedly that

> '[n]o good faith argument can be made that Defendant's "breach of contract and failure to forward monies owed" claim in the state court affidavit of complaint is identical to either of the FDCPA claims brought here for the purposes of claim preclusion.  [Defendant's] motion to dismiss is denied, and the Court invites Plaintiff to move for fees incurred in defending the present motion under 28 U.S.C. § 1927.'

*Means*, 2015 U.S. Dist. LEXIS 41932 at *5.  In other words, the *Means* court concluded that the Defendant's argument that simple FDCPA claims were barred under *Rooker-Feldman* principles was sanctionable as unduly causing multiplicity of federal court proceedings under 28 U.S.C. § 1927.  Plaintiff respectfully requests that the reasoning in *Means* be adopted in this case and accepts Judge Jones' gracious invitation "to move for fees incurred in defending the present motion under 28 U.S.C. § 1927."

**PLAINTIFF HEREBY REQUESTS AN AWARED OF FEES AND COSTS UNDER SECTION 1927 FOR HAVING TO DEFEND AGAINST LANGSDALE'S FRIVOLOUS ROOKER-FELDMAN ARGUMENTS.**

Langsdale's unnecessary filings are sanctionable under 28 U.S.C. § 1927.  "Any attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the

---

[1] Motion to Dismiss at 5-8.

court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Schutts v. Bently Nevada Corp.*, 966 F. Supp. 1549, 1559 (D. Nev. 1997).

Despite Langsdale's citations to mostly federal cases in California districts, there is also abundant authority in the Ninth Circuit and elsewhere that Judge Jones' analysis in *Means* is correct. In *Garduno v. Autovest LLC*, 143 F. Supp. 3d 923 (D. Ariz. 2015), the district court provided a thorough and persuasive explanation of the development of the *Rooker Feldman* doctrine and its potential application to FDCPA claims. The Court in *Garduno* first pointed out that

> [t]he *Rooker-Feldma*n doctrine forbids a losing party in state court from filing suit in federal district court complaining of an injury caused by a state court judgment, and seeking federal court review and rejection of that judgment.

*Id.* at 926 (citing *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013)). The Court explained that the application of this "general rule" requires two steps. *Id.* In the first step, the court must decide if any of the claims in the federal case is "a forbidden *de facto* appeal of a state court decision." *Id.* (citing *Bell, supra.*). If one of Plaintiff's claims is not a "*de facto* appeal," then *Rooker-Feldman* does not apply and the case may proceed. *Id.* If the Court decides that one of Plaintiff's claims is a "*de facto* appeal," then the claim constituting that appeal is barred as is any claim "'inextricably intertwined' with the state court judicial decision." *Id.* (citing *Bell, supra*).

In *Garduno,* the Court held Plaintiffs' FDCPA claim was not a "*de facto* appeal," because the claim was not "a direct attempt to complain of an erroneous decision by the state court. *Id.* at 927. The *Garduno* Court pointed out that "for purposes of Plaintiffs' FDCPA claim, **the state court judgment is largely irrelevant**." *Id.* (emphasis added). Plaintiff in *Garduno* alleged "that the FDCPA violation occurred when Defendants filed their state court lawsuit. *Id.* The Court stated that "the fact that judgment was eventually entered in that case does not directly impact the FDCPA claim." *Id.* The Court also emphasized that "**Plaintiff's FDCPA claim is not complaining about the**

**state court judgment**." *Id.* (emphasis added). Plaintiff's FDCPA claim was based on "an allegedly illegal act" by Defendants. *Id.* The Court also determined Plaintiffs "were not seeking relief from the state court judgment." *Id.* Plaintiffs' complaint made it very clear "that the state-court judgment [is] valid" and they are not "attacking the [state court] judgment" nor are they "trying to set it aside." *Id.* Plaintiffs admitted that the state court judgment stands whether or not Plaintiffs prevailed on their FDCPA claim. *Id.* The Court held that the "fact Plaintiffs do not seek to undo the state court judgment strongly supports finding the *Rooker-Feldman* doctrine inapplicable. *Id.* Finally, the *Garduno* Court concluded that "Plaintiffs [were] not seeking relief from the state court judgment and their FDCPA claim is not a *de facto* appeal. Therefore, the *Rooker-Feldman* doctrine does not bar Plaintiffs' FDCPA claim." *Id.*

Similarly, in *Black v. Autovest, LLC,* 2015 U.S. Dist. LEXIS 172141 (D. Ariz. 2015), the Court held Plaintiff's FDCPA claims were not barred by the *Rooker-Feldman* doctrine. The Court stated Plaintiff was not challenging the state court judgment in this federal litigation. Rather," he challenges Defendants' representations at the time Autovest filed the state court action." *Id.* at *9. Plaintiff in *Black* also admitted that the state court judgment would stand whether or not Plaintiff prevailed on the FDCPA claim. *Id.* Thus, the Court concluded that the *Rooker-Feldman* doctrine "did not bar Plaintiff's claims." *Id.* (citing *Vacation Village, Inc. v. Clark County, Nev.* 497 F.3d 902, 910 (9th Cir. 2007) (*Rooker-Feldman* only applies when the plaintiff assert that its injury was caused by errors in the state court and it seeks a remedy from the state court judgment).[2]

Finally, in *Thorpe v. Ertz*, 2016 U.S. Dist. LEXIS 178322 *; 2016 WL 7411524 (D. Alaska December 22, 2016), the Court followed the two-step analysis required by *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. Idaho 2013). The Court found the complaint alleged Defendant violated the FDCPA and the UTPCPA by attempting to collect an excessive amount of attorney's fees. *Thorpe at*

---

[2] *See also Naranjo v. Universal Sur. of Am.,* 679 F.Supp.2d 787, 794-796 (S.D. Tex. 2010) (citing various cases holding that the *Rooker Feldman* doctrine does not bar FDCPA claims based on wrongful conduct of Defendants in process of obtaining judgment); *Ness v. Gurstel Chargo, P.A.* 933 F.Supp.2d 1156, 1162-63 (D. Minn. 2013) (collecting cases holding that the *Rooker-Feldman* doctrine does not bar an FDCPA claim).

1    *pp. 7-8.* The Court held that because the allegedly illegal act was committed by Defendant, and not the

2    court, the *Rooker-Feldman* doctrine did not deprive the Court of jurisdiction. *Id.*

3         The facts in the case at bar are essentially identical the facts in the *Garduno, Black, and Ertz*

4    cases cited above. In this case, Plaintiffs' complaint alleges that **DEFENDANTS** committed the

5    "Collection Fee Violations," the "§ 1692(g) Violations," and the "Misrepresentation Violation."

6    Plaintiff does not allege that the Court committed any illegal act.  Plaintiff does not seek to undo the

7    state court judgment and Plaintiff is not seeking relief from the state court judgment.  The FDCPA

8    claims are not a *de facto* appeal and *Rooker-Feldman* does not bar Plaintiff's FDCPA claims.

9         In support of their arguments, Defendants primarily rely on cases from other districts that

10   predate *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. Idaho 2013).  Defendants also cite but fail to

11   discuss[3] the more recent case of *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)

12   which provides a "two-step" process for determining whether the *Rooker-Feldman* doctrine bars

13   Plaintiff's clams.

14        Defendants also cite to *Grant v. Unifund CCR Partners*, 842 F. Supp. 2d 1234, 1239 (C.D.

15   Cal. 2012), and other cases to argue that Plaintiff's claims are barred under *Rooker-Feldman.*[4]

16   However, all of these cases are clearly distinguishable from the case at bar.  *Grant* is distinguishable

17   from the case at bar because the *Grant* Court determined that Plaintiff clearly sought to challenge the

18   state court judgment.  *Id.  Williams v. Cavalry Portfolios Servs.*, *LLC*, 2010 U.S. Dist. LEXIS 79935

19   (C.D. Cal. July 20, 2010), is distinguishable because that Court rejected Plaintiff's FDCPA claims

20   based on (1) whether Plaintiff was liable for the debt and (2) whether Plaintiff was properly served in

21   state court."  The Court held *Rooker-Feldman* applied. *Id.*  Next, *Fleming v. Gordon & Wong Law*

22   *Group, P.C.*, 723 F. Supp. 2d 1219 (N.D. Cal. 2010), is distinguishable as the Court needed to

23   determine the validity of the debt recognized by the state court.

24        Since Defendants have failed to recognize the most relevant Supreme Court and 9th Circuit

25   precedent, their arguments are wholly unpersuasive.  Based on the foregoing, Plaintiff submits

26

27        [3] *See* Motion to Dismiss at 5.

     [4] See Motion to Dismiss at 6-8.

28

Defendants' Motion to Dismiss based on the *Rooker-Feldman* doctrine must be denied.  Based on repeated baseless arguments Langsdale makes over several cases, it is time for the court to consider sanctions for needless multiplicity of proceedings.

**B.     PLAINTIFF'S CLAIMS UNDER SECTION 1692G OF THE FDCPA AND STATE LAW CLAIMS ARE ADEQUATELY PLEADED UNDER *TWOMBLY***

Langsdale argues next that that Plaintiff's Section 1692g claim and state law claims fail as a matter of law because they are inadequately pleaded under Fed. R. Civ. P. 8(a), i.e., the *Bell Atlantic v. Twombly* pleading standard.  Motion to Dismiss at 8-11.  Langsdale's argument is largely based on his contention that Plaintiff did not specifically plead that Langsdale communicated with him.

The Ninth Circuit addressed *post-Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In *Starr,* the 9th Circuit held, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

With respect to a claim for violation of the FDCPA, the Plaintiff must allege that he or she has been subjected to "abusive debt collection practices by debt collectors."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (quoting 15 U.S.C. § 1692(e)). Thus, by implication, the claim must involve a debt as defined by 15 U.S.C. § 1692. *Id*. Section 1692(a)(5), defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692(a)(5). Finally, the Plaintiff must allege that the debt arose from ".  .  . some kind of business dealing or other consensual obligation.'" *Id.* (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)).

In *Janti v. Encore Capital Group, Inc*., 2010 U.S. Dist. LEXIS 78199 (S.D. Cal. Aug. 3, 2010), the Court denied the Defendants' motion to dismiss, ruling that Plaintiff had sufficiently alleged a

1   claim under the FDCPA.  *Id.*  First, the Court found the Complaint identified Plaintiffs as "consumers

2   and debtors as defined in 15 U.S.C. 1692(a)(3) …. *Id.* at *10-15.  The Court also found that the

3   complaint adequately pleaded that the subject of Defendant's collection activities was a consumer

4   debt.  *Id.* (quoting Complaint ¶ 13 "Plaintiff opened a credit account with FCNB-Spiegal . . . [and]

5   incurred charges on the FCNB-Spiegal account through 1999"). The Court also found the Complaint

6   adequately alleged that Defendant engaged in debt collection activity because Plaintiff alleged that

7   Defendant sent Plaintiff a debt collection letter. *Id.*  Thus, the Court concluded the Complaint

8   sufficiently alleged Plaintiff was subjected to collection activity that arose from a consumer debt.  *Id.*

9       Next, the Court found that the Plaintiff alleged that the Defendants were debt collectors under

10  the FDCPA. In making this finding the Court noted that "…the Complaint alleges that Defendants are

11  "debt collectors" by stating: "[Defendants] engage in debt collection activity against consumers such

12  as Plaintiff herein, and those similarly situated, and report evidence of the status of delinquent debts to

13  the various national consumer credit reporting agencies as furnisher[s] of information to consumer

14  reporting agencies." *Id.*

15      Finally, the Court found the Complaint sufficiently alleged that Defendants "…engaged in any

16  act or omission in violation of the prohibitions or requirements of the [Fair Debt Collection Practices]

17  Act." *Id.*  (citing *Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 U.S. Dist. LEXIS 9271, 2005 WL

18  1168421, at *3 (N.D. Cal. 2005).  The Court found that Plaintiff satisfied this requirement by alleging

19  that Defendant mailed Plaintiff " . . . a letter that attempted collection of a time-barred debt, and then

20  suing on the debt . . . ." *Id.*

21      Similarly, in *Cutler ex rel. Jay v. Sallie Mae, Inc.*, 2014 U.S. Dist. LEXIS 181914 (C.D. Cal.

22  Sept. 9, 2014), the Court granted Defendants' motion to dismiss; but granted Plaintiff leave to amend

23  the Complaint.  *Id.* at *4-7.  First, the Court found that the Complaint alleged that the Plaintiff

24  obtained a "student loan" from Sallie Mae; and that this allegation "plainly suffices to allege a

25  transaction in which the money that is the subject of the transaction is primarily for personal

26  purposes." *Id.*

27      The Court then considered whether the Plaintiff adequately alleged the content of any

28  communications between Defendants and Plaintiff.  The Court found that the complaint contained

"only perfunctory allegations of communications between Defendants and Plaintiff."[5]   The Court rejected the Defendants' argument that all communications had to be pleaded with particularity under Rule 9(b), ruling that only claims based on false or misleading communications need be pled with particularity under Rule 9(b).   On the other hand, the Court stated, a Plaintiff "…may plead a harassing, oppressive, abusive, unfair, or unconscionable communication without any allegations of fraud or mistake;" and that such allegations need not meet the heightened pleading standard of Rule 9(b).

The decisions in *Janti; supra* and *Cutler; supra.* are persuasive and instructive with respect to the case at bar.  Like the Plaintiffs in *Janti,* the Plaintiff in this case has sufficiently alleged a claim under the FDCPA. However, the Plaintiff's complaint does not suffer from the same defects described in the *Cutler* case.

Like the Plaintiffs in *Janti* and *Cutler*, Mr. Cutts has alleged that he is a consumer under Section 1692a(3).  *See* Complaint at ¶ 4.  He also alleges that his claim arises out of a contract with to provide him with personal medical services.  *Id.* at ¶¶ 9-10.  Like Plaintiff's allegation in *Cutler,* this allegation "plainly suffices to allege a transaction in which the money that is the subject of the transaction is primarily for personal purposes." *Cutler* at pp. *4-*7.

Further, like the Plaintiffs in *Janti* and *Cutler*, Mr. Cutts  has alleged that Langsdale engaged in debt collection activity.  Also, like the Plaintiffs in *Janti* and *Cutler,* the Plaintiff in this case has alleged that the Defendants were debt collectors under the FDCPA. (*See* Complaint at ¶ ¶  5-7).

Finally, the like the Plaintiff in *Janti,* Plaintiff has sufficiently alleged Defendants "…engaged in an act or omission in violation of the prohibitions or requirements of the [Fair Debt Collection Practices] Act." *Janti, supra. at 10-15* (citing *Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 U.S. Dist. LEXIS 9271, 2005 WL 1168421, at *3 (N.D. Cal. 2005).  Plaintiffs have made detailed allegations of conduct that violates the FDCPA, including: 1) adding a Collection Fee that exceeds the contractual collection fee rate; 2) failing to provide notice to Plaintiffs regarding the Alleged Debt; 3) adding

---

[5] The Plaintiff alleged that the Defendants "beg[u]n collecting Ms. Cutler's alleged debt from Ms. Cutler both telephonically and via written communications." (FAC ¶¶ 69, 78). *Id.*

unlawful interest to the Alleged Debt; 4) failing to inform Plaintiff of substitution of counsel; and 5) continuing to prosecute the suit against Plaintiff despite prior FDCPA violations. (*See* Complaint at ¶¶ 12, 13, 17-18.). Moreover, Plaintiffs have alleged that Defendant Langsdale violated the FDCPA by: (1) failing to provide validation of debt letter in compliance with Section 1692(g) and (2) attempting to collect a judgment that included sums that were unlawful and improperly calculated and inflated. *Id.* at ¶¶ 12, 13, 17-18.

It should also be noted that unlike the Plaintiffs in *Cutler; supra.*, the Plaintiff in this case has not made claims based on false or misleading communications; which must be pled with particularity under Rule 9(b). In this case, Plaintiff's allegations are based on the Defendants' attempt to collect the Alleged Debt by "unfair or unconscionable means" and these allegations need not meet the heightened pleading standard of Rule 9(b).

Based on the foregoing, Plaintiff submits that she has adequately pled a claim under the FDCPA. Accordingly, Plaintiff respectfully submits that Langsdale's Motion must be denied.

### 2. Langsdale's Argument That Plaintiff's Complaint Failed to Provide Him With Fair Notice of Which Sections of the FDCPA It Violated Is Without Merit As The Controlling Authorities Do Not Require Plaintiffs to Identify Particular Sections of the FDCPA.

Langsdale contends that Plaintiff has not provided sufficient factual information to "make it plausible' a debt collector violated the FDCPA.[6]  In support of this proposition, they cite to *White v. G.C. Servs., LP*, 2012 U.S. Dist. LEXIS 143206, 2012 WL 4747156 (D. Nev. Oct. 2, 2012). This case is clearly dissimilar to *White*.  Further, it must be noted that *White* made no reference to the controlling 9th Circuit authority of *Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) and *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004).

The facts of *White* are clearly dissimilar to the facts in the case at bar.  In *White*, the Plaintiff claimed the Defendant: (1) was a debt collector; (2) that "improperly called her at her workplace

---

[6] *See* Langsdale's Motion at 6-8.

concerning her alleged debt despite having been informed that her employer does not allow such communication." *White, 2012 U.S. Dist. LEXIS 143206 at *1.*

In *White*, Plaintiff filed a single claim against Defendant for violating the FDCPA; and Defendant moved to dismiss for failure to state a claim. *Id.* In granting Defendant's motion the Court noted the following:

> 1. *In the brief Complaint, Plaintiff identifies violations of several subsections of FDCPA: (1) 15 U.S.C. § 1692c(a)(1), communicating with a debtor at a time or place known to be inconvenient to the debtor; (2) § 1692c(a)(3), communicating with a debtor at her place of employment with knowledge or reason to know the employer does not permit such communication; (3) § 1692d, engaging in conduct, the natural consequences of which is to harass, oppress, or abuse; (4) § 1692e and e(10), using a false, deceptive, or misleading representation in connection with collection; (5) § 1692f, using unfair and unconscionable means in connection with collection. Defendant is correct that most of the allegations are bare recitals of the statute.*
>
> 2. *Plaintiff nearly sufficiently alleges a violation of § 1692c(a)(3), however, and that Defendant is a debt collector under the statute.*
>
> 3. *Plaintiff specifically alleges that Defendant attempted to contacted her concerning her debt after Defendant was in fact notified that her employer does not allow such communication. Plaintiff need not plead this communication with specificity, as she would have to do in a fraud action, which is the gravamen of Defendant's argument.*

Based on the foregoing, the Court found *"[w]ith respect to most of the provisions of FDCPA that Plaintiff pleads, her Complaint simply states legal conclusions, because the provisions provide for broad legal standards requiring some examination of facts—which Plaintiff does not plead—in order to determine whether there has been a violation.* However, the Court also noted that "… *Plaintiff has nearly sufficiently pled facts indicating a violation.*" Thus, the Court granted Plaintiff leave to file an Amended Complaint.

As is set forth above, the Plaintiff's claims against Langsdale are well-pleaded and they clearly make numerous detailed factual allegations to support their claims that all Defendants violated the FDCPA. Plaintiff's complaint meets the pleading requirements set forth in *Fleming v. Pickard*, 581

F.3d 922 (9th Cir. 2009) and *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004).  Accordingly, Langsdale's motion must be denied.

Nevertheless, Langsdale attempts to cherry-pick certain allegations from certain paragraphs that include legal conclusions; and then claims that these allegations do not provide Defendant with sufficient notice of the factual basis of the legal claims against Langsdale.  As is mentioned above, Plaintiff has sufficiently alleged Defendants "…engaged in an act or omission in violation of the prohibitions or requirements of the [Fair Debt Collection Practices] Act." *Janti, supra. at 10-15* (citing *Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 U.S. Dist. LEXIS 9271, 2005 WL 1168421, at *3 (N.D. Cal. 2005).  Plaintiff has made detailed allegations of conduct that violates the FDCPA, including: 1) adding a Collection Fee that exceeds the contractual collection fee rate; 2) failing to provide notice to Plaintiff regarding the Alleged Debt; 3) adding unlawful interest to the Alleged Debt; and 4) continuing to prosecute a case against Plaintiff which, due to Defendants' actions included sums that were unlawful and improperly calculated and inflated.  (*See* Complaint at ¶¶ 12-19).  Moreover, Plaintiff has alleged that Defendant Langsdale violated the FDCPA by: (1) failing to provide validation of debt letter in compliance with Section 1692(g) and (2) attempting to collect a judgment that included sums that were unlawful and improperly calculated and inflated.  *Id.* at ¶¶ 12-19.

Langdale's arguments to the contrary are unavailing.  For example, Langdale argues that Plaintiff has pled only two factual allegations against Langsdale.[7]  To the contrary, Plaintiff has made several factual allegations.[8]  Similarly, Defendant's arguments that Plaintiff has not sufficiently alleged a violation of Section 1692g(a) are without merit.  Plaintiff's complaint clearly alleges that Langsdale did not provide any debt verification letter.  Plaintiff alleges that Langsdale was required to

---

[7] *See* Langsdale's Motion at 7-9.

[8] Complaint at ¶¶ 12-19.

provide a letter and that letter had to comply with the requirements of Section 1692g. Plaintiff's complaint clearly gives Langsdale notice of the claims against him.**9**

If Langsdale has questions about the factual basis for this claim, he can ask those questions during the discovery. Again, it is important to note that in *Janti; supra.* the Court followed *Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) and *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) and determined that Plaintiff had sufficiently alleged that Defendants engaged in any act or omission in violation of the prohibitions or requirements of the [Fair Debt Collection Practices] Act." *Id.* The Court found that Plaintiff satisfied this requirement by alleging that Defendant mailed Plaintiff "…a letter that attempted collection of a time-barred debt, and then suing on the debt . . . ." *Id.* Plaintiff submits that their factual allegations against Langsdale are far more detailed than those that sufficed in *Janti; supra.* Finally, to the extent that Defendant is contending that Plaintiffs' failed to cite specific sections of the FDCPA, this is not required under *Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) and *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004). *See also, Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (holding Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief ").

### 3. Langsdale's Argument That the Claim Must Be Dismissed Because Plaintiff Did Not Plead Langsdale Ever Communicated with Plaintiff Is Without Merit.

---

**9** Langsdale's focus on the number of factual allegations in the Complaint is utterly misplaced when discussing FDCPA claims. The Ninth Circuit has recognized that within the particular context of the FDCPA, a single action taken by a debt collector can give rise to multiple violations of that statute. *Fox v. Citicorp*, 15 F.3d 1507, 1516 n.10 (9th Cir. 1994) ("it is not unusual for an action to violate more than one FDCPA provision"). Moreover, courts have routinely allowed debtors to pursue causes of actions under multiple sections of the FDCPA, even though each violation was based upon the same circumstances. *See Renick v. Dun & Bradstreet Receivable Management Servs.*, 290 F.3d 1055, 1057-58 (9th Cir. 2002); *Charles v. Lundgren & Assoc.*, P.C., 119 F.3d 739, 740 (9th Cir. 1997) (same course of conduct stated claims for violations of three sections of FDCPA); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004) (contemplating violations under §§ 1692e, 1692f, and 1692(g) for one collection letter).

There is no authority that requires Plaintiff to allege that she ever communicated with Langsdale (although they must have communicated in some sense when Langsdale served Cox with the offending complaint). That allegation is made by incorporating the statute.  Once again, Plaintiff has sufficiently alleged Defendants "…engaged in an act or omission in violation of the prohibitions or requirements of the [Fair Debt Collection Practices] Act." *Janti,supra. at 10-15* (citing *Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 U.S. Dist. LEXIS 9271, 2005 WL 1168421, at *3 (N.D. Cal. 2005).  Plaintiff has made detailed allegations of conduct that violates the FDCPA, including: 1) adding a Collection Fee that exceeds the contractual collection fee rate; 2) failing to provide notice to Plaintiff regarding the Alleged Debt; 3) adding unlawful interest to the Alleged Debt; and 4) continuing to prosecute a complaint against Plaintiff which, due to Defendants' actions, included sums that were unlawful and improperly calculated and inflated.  (*See* Complaint at ¶¶ 12-18).  Moreover, Plaintiff has alleged that Langsdale violated the FDCPA by: (1) failing to provide validation of debt letter in compliance with Section 1692(g) and (2) attempting to collect a judgment that included sums that were unlawful and improperly calculated and inflated. *Id.* at ¶¶ 12-18.

Plaintiff submits that this argument is without merit and Langsdale's Motion for Judgment on the Pleadings must be denied.

### C.   PLAINTIFF'S CLAIMS FOR ABUSE OF PROCESS, DECEPTIVE TRADE PRACTICES, AND CIVIL CONSPIRACY ARE ADEQUATELY PLEADED

Langsdale argues next that Plaintiff's claims for abuse of process, NRS Chapter 598 Deceptive Trade Practices, and civil conspiracy fail because Plaintiff "has pled nothing more than legal conclusions to support these claims and admit these claims are contingent on Langsdale violating the FDCPA." Motion to Dismiss at 12.  Notably, Langsdale does not cite to any legal authority for this assertion, and the argument fails to hold water.

1.     **PLAINTIFF'S SECOND CLAIM FOR RELIEF, FOR ABUSE OF PROCESS, MAY MOVE FORWARD BEYOND THE PLEADINGS**

Langsdale's Motion asserts that Cox's cause of action for abuse of process cannot succeed. *See* Langsdale's Motion at 17, 19-20.  Plaintiff's abuse of process claim is not "contingent" on the successful pleading or proof of Plaintiff's FDCPA claims.  Likewise, Plaintiff's cause of action for abuse of process is adequately-pleaded under Nevada law.

a.     **Plaintiff's Abuse of Process Claim Is Not Contingent Upon Her Separately-Pleaded FDCPA Claims.**

In a vague argument unsupported by any legal authority, Langsdale contends that Plaintiff's cause of action for abuse of process must fail because it is "contingent on Langsdale violating the FDCPA."  Langsdale's Motion at 17.  This argument does not make much sense.  If Langsdale is saying that the abuse of process claim is based on the same events as one or more of Plaintiff's FDCPA allegations against Langsdale, that is possibly true.  However, a single course of conduct may support many FDCPA claims.  *See Fox v. Citicorp*, 15 F.3d at 1516 n.10 ("it is not unusual for an action to violate more than one FDCPA provision").

Also, an abuse of process claim need not be duplicative of an FDCPA claim.  Nevada case law makes clear that an abuse of process claim need not involve any collection of any debt.  *See See also Bull v. McCuskey*, 615 P.2d 957, 959-360 (Nev. 1980) (upholding award for abuse of process against attorney who brought medical malpractice claim against physician, knowing the claim had no legal basis, with the ulterior purpose of coercing the settlement of another claim).  Plaintiff's allegations of FDCPA violations by Langsdale are independent from her allegations of abuse of process by Langsdale.  She may recover against Langsdale on either or both causes of action.  Ms. Cox's claim for abuse of process survives Langsdale's Motion.

b.     **The "Ulterior Motive" and "Willful Act" Elements of Plaintiff's Abuse of Process Claim Are Adequately-Alleged.**

Langsdale contends that Plaintiff has not made sufficient factual allegations in her Complaint to plead that Langsdale had an "ulterior motive" and made a "willful act" beyond filing a complaint, under the requirements of Nevada's abuse of process tort.[10]  To the contrary, Plaintiff has sufficiently stated an ulterior motive.

To support an abuse of process claim, a claimant must show "(1) an ulterior purpose by the [party abusing the process] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002).  "Thus, the claimant must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior motive." *Id.*  Furthermore, the tort requires a "willful act," and Nevada follows the majority rule that merely filing a complaint and proceeding to properly litigate the case does not meet this requirement.  *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 519 (Nev. 2015).  Plaintiff must include "some allegation of abusive measures taken *after* the filing of the complaint in order to state a claim."  *Gray v. Receivables Performance Mgmt.*, 2011 U.S. Dist. LEXIS 63114 (D. Nev. June 13, 2011).

Here, Ms. Cox alleges that Langsdale utilized legal process to continue to pursue the litigation against her asserting an unlawful collection fee.  *See* Complaint at ¶¶ 10-18.  Langsdale, at a minimum, utilized legal process by causing the offending complaint to be served on Ms. Cox. Langsdale may well have utilized other avenues of legal process as well, and Cox should have the opportunity to explore these issues in discovery.  In *Nevada Credit Rating Bureau, Inc. v. Williams*, 503 P.2d 9, 12 (Nev. 1972),[11] the Nevada Supreme Court upheld an award for abuse of process where a creditor attached property valued greatly in excess of the alleged debt with the ulterior purpose of

---

[10] *See* Langsdale's Motion [ECF No. 24] at 19-20.

[11] Superseded by statute on other grounds, as stated in *Countrywide Homes v. Thitchener*, 192 P.3d 243 (Nev. 2008).

coercing payment.[12]   As in *Nevada Credit Rating Bureau*, here Langsdale abused judicial process with the ulterior purpose of coercing payment, by serving and continuing to prosecute an action asserting an unlawful collection fee.

Langsdale contends obliquely that its sole purpose in pursuing the legal action was merely to collect the debt from Cox, something that is true in "all contractual disputes," not an "ulterior motive," and so Cox does not plausibly assert a claim for abuse of legal process against Langsdale.[13]   Notably, Langsdale cites no legal authority for this argument that the suit against Cox was a contract claim like any other.  This argument must fail on its face.  The tort of abuse of process is properly alleged here.

2. **PLAINTIFF'S CLAIM FOR VIOLATIONS OF NEVADA'S DECEPTIVE TRADE PRACTICES STATUTE, IS ADEQUATELY-PLEADED TO DEFEAT LANGSDALE'S MOTION FOR JUDGMENT ON THE PLEADINGS**

a. **Plaintiff's Deceptive Trade Practices Claim Is Not Contingent Upon Plaintiff's Separately-Stated FDCPA Claims**

Using the same legally-unsupported argument as for Plaintiff's abuse of process cause of action in Section III.C.1.a, above, Langsdale also contends that Plaintiff's DTP claim for relief fails as a matter of law because it is "contingent on Langsdale violating the FDCPA."  Langsdale's Motion at 17.  This argument seems to reason that if Plaintiff's FDCPA claims against Langsdale do not meet the *Iqbal* pleading standard, then the DTP claims must fail as a matter of law as "contingent" causes of action.  Langsdale does not explain whether allegedly contingent DTP claims fail because of pleading

---

[12] *See also Bull v. McCuskey*, 615 P.2d 957, 959-360 (Nev. 1980) (upholding award for abuse of process against attorney who brought medical malpractice claim against physician, knowing the claim had no legal basis, with the ulterior purpose of coercing the settlement of another claim).  Here, similarly, Langsdale served Cox with the complaint asserting the unlawful collection fee with the ulterior purpose of coercing the settlement of Cox's medical debt.

[13] *See* Langsdale's Motion at 20.

*insufficiency or fail for some other reason.  Langsdale's assertion of the "contingent" nature of DTP claims is unexplained.  Lacking any logical or legal authority, the assertion must fail.*

> **b.      Plaintiff's Deceptive Trade Practices Claim Falls Within the Required Ambit of the Sale or Lease of Goods and Services.**

Langsdale contends next that Plaintiff must be bringing her DTP claim based on Nev. Rev. Stat. 598.0923, which allows a plaintiff to recover from a person who "knowingly [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services.[14]  Langsdale further asserts that Plaintiff's claim under the DTP must be premised on her FDCPA claims and must additionally relate to the sale or lease of goods and services.[15]  Having set these assumed preconditions for Plaintiff's DTP claim, Langsdale goes on to declare that it is "abundantly clear that the FDCPA does not relate to the purchasing or leasing of goods and services."[16]

Plaintiff does not agree that her DTP claim must be brought under Section 598.0923.  Several DTP provisions seem to apply to Plaintiff's situation.  Plaintiff is a "consumer" pursuant to the NRS Chapter 598 Deceptive Trade Practices.  Additionally, Plaintiff's DTP claim would certainly allege that "Defendants engaged in unfair or deceptive acts or practices in the conduct of its commerce or trade through its unfair and deceptive debt collection and litigation activities in violation of NRS Chapter 598."  Further, Defendants' violations of NRS Chapter 598 include, but are not limited to:

A.  NRS 598.0915(15): Knowingly makes any other false representation in a transaction.

B.  NRS 598.0923(2): Fails to disclose a material fact in connection with the sale or lease of goods or services.

---

[14] *See* Langsdale's Motion at 17-19.

[15] *See id.*

[16] *See id.*

C. NRS 598.0923(3): Violates a state or federal statute or regulation relating to the sale or lease of goods or services.

Notably, Plaintiff contends that Defendants violated both NRS 598.0923(2) and NRS 598.0923(3). Both of these subsections involve "the sale or lease of goods or services."

However, Langsdale's categorical assertion that the FDCPA does **not** relate to the sale or lease of goods or services is unfounded.  Just because the FDCPA regulates "debt collection practices" does not exclude "the sale or lease of goods or services" from its wide reach. *See Clark v. Capital Credit*, 460 F.3d at 1176-78 (explaining that the FDCPA is a" remedial statute" which "should be interpreted liberally in favor of the consumer" and that the FDCPA was drafted by Congress "to be both explicit and comprehensive, in order to limit the opportunities for debt collectors to evade the underlying legislative intention.") (quotations omitted).  Plaintiff's DTP claims are necessarily based on the factual allegations in this case, which relate to the purchase of services.  Ms. Cox purchased medical services, bringing her claims within the wide ambit of the FDCPA as well as the DTP.  *See Clark v. Capital Credit*, 460 F.3d at 1166-67 (applying FDCPA to debt arising from mental health services provided to consumer by her former doctor*).  See also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (explaining that FDCPA explicitly includes an alleged obligation to pay money arising out of a transaction [for] . . .services).

Langsdale's citation to *Peatrowsky v. Persolve*, 2014 U.S. Dist. Ct. LEXIS 38320, *5 (D. Nev. Mar 24, 2014) for the proposition that "consumers may not borrow the FDCPA to allege a claim under DTPA" is inconsistent with the FDCPA's broad contruction to protect consumers and the FDCPA's clear application to the sale of medical services.  *See Clark v. Capital Credit*, 460 F.3d at 1166-67, 1176-77.  Langsdale's overly-narrow argument that Plaintiff cannot bring claims under both the FDCPA and the DTPA for the same factual allegations must fail.

**D.      NRS CHAPTER 598 APPLIES TO THE SALE OF GOODS AND SERVICES**

Langsdale argues next that Plaintiff's claim for Deceptive Trade  under NRS Chapter 598 "fails as a matter of law because the FDCPA does not regulate the sale or lease of goods or services." Motion to Dismiss at 12-14.

Langsdale's categorical assertion that the FDCPA does **not** relate to the sale or lease of goods or services is truly unfounded.[17]  Just because the FDCPA regulates "debt collection practices" does not exclude "the sale or lease of goods or services" from its wide reach.  *See Clark v. Capital Credit*, 460 F.3d at 1176-78 (explaining that the FDCPA is a" remedial statute" which "should be interpreted liberally in favor of the consumer" and that the FDCPA was drafted by Congress "to be both explicit and comprehensive, in order to limit the opportunities for debt collectors to evade the underlying legislative intention.") (quotations omitted).   Plaintiff's Deceptive Trade Practices claims are necessarily based on the factual allegations in this case, which relate to the purchase of services.   Mr. Serrata purchased medical services, bringing his claims squarely within the wide ambit of the FDCPA as well as NRS Chapter 598.  *See Clark v. Capital Credit*, 460 F.3d at 1166-67 (applying FDCPA to debt arising from mental health services provided to consumer by her former doctor*).   See also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (explaining that FDCPA explicitly includes an alleged obligation to pay money arising out of a transaction [for] . . .services).   Thus, Langsdale's request for dismissal of Plaintiff's Chapter 598 claims must be denied.

### E.   PLAINTIFF HAS PLAUSIBLY ALLEGED AN ULTERIOR PURPOSE FOR ABUSE OF PROCESS

Langsdale argues next that Plaintiff's claim for abuse of process must fail because plaintiff did not plead sufficient factual allegations making it plausible that Langsdale had an ulterior motive. [18]. This argument is clearly erroneous.  In his claim for Abuse of Process, Plaintiff incorporates by reference each and every allegation previously made in his Complaint into the Abuse of Process Claim.  Plaintiff specifically alleges that *Defendants commenced and/or prosecuted legal proceedings*

---

[17] *See* Motion to Dismiss at 18.

[18] Motion to Dismiss at 14-15.

1  *against Plaintiff for the ulterior purpose of collecting unlawful rates of interest and unlawful fees in*

2  *violation of the FDCPA.*[19]

3     Plaintiff's claims are akin to those in *McCollough v. Johnson, Rodenburg & Lauinger, LLC*,

4  637 F.3d 939, 956-57 (9th Cir. 2011), where the Ninth Circuit upheld a jury award in favor of Plaintiff

5  for the $1,000 statutory maximum for violations of the FDCPA; $250,000 for emotional distress; and

6  $60,000 in punitive damages. Plaintiff asserted claims for violations of the FDCPA, unfair trade

7  practices, and state law claims for malicious prosecution and abuse of process. *Id.*  On the abuse of

8  process claim, the *McCollough* Court applied Montana law which provides that a claim for abuse of

9  process consists of two elements: "(1) an ulterior purpose; and (2) a willful act in the use of the

10  process not proper in the regular conduct of the proceeding." *Id.* at 956-57.

11     On cross-motions for summary judgment in *McCollough*, the Court ruled certain facts had

12  been established (the "Established Facts").[20]  The Court found that Plaintiff had produced sufficient

13  evidence to sustain his abuse of process claim, that the Established Facts demonstrated Defendant

14  "willfully filed a lawsuit 'with an ulterior purpose of extracting money from the [Plaintiff]…,' and

15  Defendant 'had no valid legal claim against Plaintiff and knew it, but filed an action . . . nonetheless.'"

16  *Id.*  The Court further found that "substantial evidence supported the jury's finding of liability on [the

17  abuse of process] claim."  *Id.* at 956-57.[21]  The *McCollough* Court held that based on the evidence the

18  jury could infer Defendants purpose in filing the lawsuit was to coerce [Plaintiff] to pay awards and

19  fees to which it and the creditor were not entitled.  *Id.*  The Court held that the "jury's abuse of process

20  verdict was supported by substantial evidence, and the district court properly denied Defendants'

21  motion for judgment as a matter of law."

22

23  _____

[19] Complaint at ¶¶ 36-39.

24  [20] The Established Facts included: (1) On April 17, 2007, Defendant filed a time-barred lawsuit against Plaintiff;
(2) Defendant knew that the lawsuit was time-barred. (3) Defendant prosecuted the time-barred lawsuit through December

25  2007. *Id.*

26  [21] Plaintiff in *McCollough* presented evidence that: (1) Defendant filed a baseless action with knowledge that it
had no legal claim," (2) Defendant "filed and pursued a time-barred lawsuit against him, even though Defendant's own
electronic file indicated the suit was time-barred," (3) "Defendant continued to prosecute the collection case for four

27  months after having been explicitly told" by the creditor there were no grounds for extending the statute of limitations, (4)
Defendant "sought attorney's fees without confirming that [Plaintiff] had a contractual fee obligation. *Id.*

28

Considering the factual allegations in the light most favorable to Plaintiff, as the Court must on a motion to dismiss, Plaintiff has sufficiently alleged an ulterior purpose here.  Plaintiff has plainly set forth adequate factual allegations regarding the "Collection Fee Violations," the "§1692(g) Violations," and the "Misrepresentation Violation."   Like *McCullough*, Plaintiff alleges that Defendants filed suit to extract money from Plaintiff that they could not legally obtain in a collection action and that they filed a baseless action with knowledge that the Collection Fees and Misreprentation of the Debt Amount were illegal.  One can easily infer that Defendants' purpose in filing the COJ was to coerce Plaintiff to pay amounts and fees to which Defendants are not entitled.  SeeBased on the foregoing, Plaintiff has sufficiently alleged that Defendants acted with an ulterior purpose to sustain an abuse of process claim.

### F.      LANGSDALE'S  DERIVATIVE ARGUMENT FOR DISMISSAL OF PLAINTIFF'S CIVIL CONSPIRACY CLAIM MUST BE REJECTED

Langsdale argues next that Plaintiff's claim for civil conspiracy must be denied with prejudice because Plaintiff has not alleged sufficient factual allegations that Langsdale conspired to commit an underlying tort.[22]  This argument is based on Langsdale's erroneous assumption and argument that Plaintiff's civil conspiracy claim is premised entirely on Langsdale's FDCPA violations.  Langsdale assumes, incorrectly, that all of Plaintiff's other claims will be dismissed, and that the civil conspiracy claim cannot stand independently from the FDCPA claims.  Plaintiff respectfully submits that this Opposition to Langsdale's Motion to Dismiss makes it clear that Plaintiff's claims will not be dismissed.  Given that Langsdale's assumption is incorrect, Langsdale's Motion to Dismiss Plaintiff's Civil Conspiracy claim must be denied.

### G.      PLAINTIFF HAS SUFFICIENTLY PLEADED THAT DEFENDANTS ENTERED INTO A BUSINESS TRANSACTION WITH PLAINTIFF.

Langsdale argues next that Plaintiff's claim for negligent misrepresentation must faile because Plaintiff did not enter iinto a business transaction with Langsdale.  Motion to Dismiss at 16-17.  This

---

[22] *See* Motion to Dismiss at 15-16.

1    argument is meritless.  Notably, Langsdale cites no authority for his argument that he and Plaintiff

2    were involved in a business transaction.

3        The entire debt collecrtion process is a business transaction between Defendants and Plaintiff.

4    The fact that it occurs in the course of litigation makes no difference, as Langsdale appears to contend.

5    Moreover, the misrepresentation is adequately-pleaded to satisfy Rule 9.  As detailed in the Complaint

6    [ECF 1] at ¶¶ 16-22, the Defendants submitted an Affidavit of Dr. Molin to the court in support of a

7    default judgment.   The who, what, when, where, and why aspects of pleading fraud-related claims

8    under Rule 9 have been satisfied.  The affidavit contained false information and caused the default

9    judgment against Mr. Cutts to be granted, causing damages to Mr. Cutts.   The negligent

10   misrepresentation claim must stand.

11       ## H.    SHOULD THE COURT GRANT ANY PART OF THE MOTION TO DISMISS, THEN  LEAVE TO AMEND SHOULD BE FREELY GIVEN

12

13       As set forth above, Langsdale's Motion to Dismiss should fail on all counts.  But should the

14   Court agree with Langsdale's position on any issue in the Motion to Dismiss, then Plaintiff

15   respectfully requests leave to amend its Complaint.[23]

16       Leave to amend should be freely given, in light of the federal courts' strong policy

17   permitting amendment.  *See* Fed. R. Civ. P. 15(a)(2), *Plumeau v. Sch. Dist. No. 40*, 130 F.3d 432,

18   439 (9th Cir. 1997).  Dismissal without leave to amend is improper unless it is clear that the

19

20   complaint could not be saved by **any** amendment.  *See Thinket Ink Info Res., Inc. v. Sun*

21   *Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (emphasis added). As explained above in

22   detail, Plaintiff's Complaint is adequately-pleaded.  In the alternative, Plaintiff may readily amend

23   its complaint to address any shortcomings the Court might identify.  Plaintiff also respectfully

24

25

26       [23] Defendant Langsdale contends at various points in his Motion to Dismiss, with no factual or legal authority
or analysis, that his Motion to Dismiss should "be granted without leave to amend" and that Plaintiff;s claims ought to
27   be "dismissed with prejudice," Motion to Dismiss at 15, 17.   But no analysis of the leave to amend standard is
provided to add meat to these contentions, leaving them ephemeral and conclusory, adding nothing to Mr. Langsdale's
28   legal arguments.  Leave to amend should be freely granted, if necessary, under *Thinket Ink*, 368 F.3d at 1061.

1   seeks an award of attorneys' fees and costs for having to defend against meritless motion practice

2   under 28 U.S.C. § 1927.

3   **V.      CONCLUSION**

4       For the foregoing reasons, Mr. Langsdale's  Motion to Dismiss must be denied..

5   DATED this 7th day of July, 2017.

6                     THE LAW OFFICE OF VERNON NELSON

7

8              By:      */s/Vernon Nelson*
                  VERNON NELSON, ESQ.

9                     Nevada Bar No.: 6434
                  MARGARET G. FOLEY, ESQ.

10                    Nevada Bar No.:  7703
                  9480 S. Eastern Avenue, Suite 244

11                    Las Vegas, NV   89123
                  Tel:  702-476-2500

12                    Fax:  702-476-2788
                  E-Mail:  vnelson@nelsonlawfirmlv.com

13                    *Attorneys for Plaintiff Michael Cutts*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28