1  VERNON A. NELSON, JR., ESQ.
Nevada Bar No.: 6434
2  MARGARET G. FOLEY, ESQ.
Nevada Bar No.:  7703
3  THE LAW OFFICE OF VERNON NELSON
9480 S. Eastern Avenue, Suite 244
4  Las Vegas, Nevada 89123
Tel.: 702-476-2500
5  Fax.: 702-476-2788
Email: vnelson@nelsonlawfirmlv.com
6  *Attorneys for Michael Cutts*

7

UNITED STATES DISTRICT COURT

8

DISTRICT OF NEVADA

9

10  MICHAEL CUTTS,                                  Case No.: 2:17-cv-01525-JCM-PAL

11              Plaintiff,

12  v.                                              **PLAINTIFF'S RESPONSE TO
                                                    DEFENDANT RICHLAND HOLDINGS'
13  RICHLAND HOLDINGS, INC. d/b/a                   MOTION TO DISMISS OR,
ACCTCORP OF SOUTHERN NEVADA, a                      ALTERNATIVELY, MOTION FOR
14  Nevada Corporation; CALEB J.                    MORE DEFINITE STATEMENT**
LANGSDALE, ESQ. dba The LANGSDALE
15  LAW FIRM, P.C.; and CLIFFORD MOLIN,
M.D. a/k/a Zeeba Sleep Center
16
17              Defendants.

18

19          Plaintiff Michael Cutts, by and through his attorneys of record, the Law Office of Vernon a

20  Nelson, hereby files this (1) Opposition to Defendant Richland Holdings, Inc. d/b/a/ Account Corp. of

21  Southern Nevada's Motion to Dismiss ("Opposition").  Plaintiff is preparing a Motion for Leave to

22  File an Amended Complaint ("Motion for Leave to Amend").  Plaintiff's Response is based upon the

23  following points and authorities, the pleadings and papers on file herein, and any oral argument

24  allowed by this Court at the time of hearing of this matter.

                        **MEMORANDUM OF POINTS AND AUTHORITIES**
25
**I.      INTRODUCTION**
26
27          Defendant Richland Holdings Inc. d/b/a Account Corp. of Southern Nevada ("ASN") filed its

28  Motion to Dismiss or, Alternatively, Motion for A More Definite Statement [ECF 10].  Defendant

Clifford Molin, M.D., aka Zeeba Sleep Center, joined in the Motion to Dismiss [ECF 14].  Plaintiff therefore refers to ASN and Dr. Molin jointly as "Defendants" for purposes of this Opposition.

Defendants' arguments for dismissal based on the *Rooker-Feldman* doctrine and principles of issue and claim preclusion are without merit and must be denied.  Defendants have relied on outdated authority and failed to cite newer authority that sharply distinguishes and limits the outdated authority upon which Defendants rely.

Similarly, Defendants' argument for dismissal of Plaintiff's Abuse of Process claim is without merit and must be denied.  Here, too, it must be noted that Defendants' rudimentary argument overlooks relevant and important Ninth Circuit case law that is directly on point.

Plaintiff's cause of action for Civil Conspiracy must also stand.  Defendants' sole and unsupported argument for dismissal is that the Civil Conspiracy claim fails because the FDCPA claims fail.  In fact, though, these causes of action are independent of each other and are all adequately-pleaded to withstand Defendants' Motion.

Plaintiff's Misrepresentation claim also succeeds in the face of Defendants' Motion.  The cause of action is correctly pleaded in the alternative, as knowing or negligent; no relief is sought on behalf of the state court; and Plaintiff justifiably relied on Defendants' misrepresentation.

Plaintiff does not oppose Defendants' request for a more definite statement with respect to Plaintiff's Deceptive Trade Practices claim.  Accordingly, Plaintiff is preparing a Motion for Leave to Amend to add more details to this claim.

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

II.    **STATEMENT OF FACTS**

This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. ("FDCPA") and related State Law Claims. In the Complaint, Plaintiff alleges that the ***DEFENDANTS*** engaged in unlawful conduct that gives rise to Plaintiff's Complaint. Plaintiff is seeking to recover damages caused by the ***DEFENDANTS'*** unlawful conduct.  Plaintiff contends: (1) that Defendants violated numerous provisions of the FDCPA, as described below; and (2) that they violated state law too, as described below.  ***HOWEVER, PLAINTIFF DOES NOT ASK THIS***

1   ***COURT TO SET ASIDE THE JUDGMENT OR TO DIRECT ANY ORDER TO THE STATE***
2   ***COURT.***

3       Richland Holdings, Inc. d/b/a ACCTCORP OF SOUTHERN NEVADA ("ASN") filed a
4   lawsuit against Plaintiff in Justice Court in Las Vegas Township; Case No. 16-C-020177 (the
5   "Collection Lawsuit").   ASN alleged Plaintiff entered a contract with Clifford Molin, M.D.
6   Defendants alleged Plaintiff failed to pay the amount owed to Dr. Molin under the Contract ("The
7   Debt").   ASN retained Defendant Caleb J. Langsdale to file the complaint on behalf of ASN.   (*See*
8   "Collection Complaint," ECF No. 10 at pp. 39-41).   Defendants filed an Application for Default
9   Judgment.   (*See* "Application for Default Judgment, ECF 10 at pp. 23-37).   The Application for
10  Default Judgment provides for (1) principal in the amount of $411.80 (which includes the unlawful
11  contractual collection fee), plus (2) interest at the maximum legal rate; (3) $111.50 in court costs; and
12  (4) reasonable attorney's fees in the amount of $750.00.   The collection fee is equal to 50% of the
13  principal balance assigned to ASN.  The Court granted Defendant's Application and entered an Order
14  for Default Judgment. (*See* "Order for Default Judgment," ECF 10 at p. 47[1]).   Finally, Defendants
15  filed a Notice of Entry of Judgment.  (*See* "Notice of Entry of Judgment," ECF 10 at 44-45).

16      Plaintiff did not know or had not discovered Defendants had committed the violations that are
17  the bases of Plaintiff's current claims.  Plaintiff is not "collaterally attack[ing] the bases for damages"
18  
19  that were decided more than a year ago.  He is asserting recently-discovered claims that are based on
    illegal acts committed by Defendants, not by the state court.
20  

21      Plaintiff alleges ***DEFENDANTS*** committed multiple violations of the FDCPA. Plaintiff
22  further alleges causes of action for abuse of process, violation of NRS Chapter 598 Deceptive Trade
23  Practices, Civil Conspiracy, and Negligent Misrepresentation (*See* Complaint [ECF 1]).   Plaintiff
24  alleges that ***DEFENDANTS*** violated the FDCPA by charging unlawful collection charges. [ECF No.
25  
26  
27  _____
        [1] The Order for Default Judgment does not specify the amount of the collection fees included in the judgment
    amount. (*See* ECF 10 at pp. 46-47.).
28

1 at ¶¶ 13-15, 27-33].  The collection fee was equal to 50% of the principal balance of the Debt (the "Collection Fee Violations").

Plaintiff alleges that § 1692(g) of the FDCPA requires that debt collectors provide debtors with written notice of the Debt; and notice of the Debtor's right to verify the Debt (the "Validation Notice"). Plaintiff alleges that *DEFENDANTS* unlawfully failed to provide the Validation Notice; and that *DEFENDANTS* failed to notify Plaintiff that the alleged amount owed included a collection fee equal to 50% of the principal balance of the Debt (the "§ 1692(g) Violations").

Plaintiff also alleges that *DEFENDANTS* misrepresented the amount of the debt to the Justice Court, by submitting in support of the default judgment an incorrect and misleading declaration.  As a result, Defendants were able to obtain a Default Judgment against the Plaintiff which included sums that were unlawful.  [ECF No. 1 at ¶¶ 17-22].

Plaintiff alleges that *DEFENDANTS'* actions constitute violations of the FDCPA.  Plaintiff also alleges that *DEFENDANTS'* actions give rise to claims for Abuse of Process, Violation of NRS Chapt. 598 Deceptive Trade Practices, Civil Conspiracy, and Negligent Misrepresentation.  Plaintiff alleges Defendants' collective violations of the FDCPA and their other wrongful acts have caused Plaintiff to suffer substantial economic damages, severe emotional damages, and damages to his credit history and reputation.  Plaintiff has also incurred substantial attorney's fees in bringing this action.  Finally, in his prayer for relief, Plaintiff prays for damages caused by *DEFENDANTS'* conduct.  Again, Plaintiff is not requesting any relief from the Order for Default Judgment [ECF No. 10 at pp. 46-47].

**III.    STANDARD OF REVIEW**

   **A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction per FRCP 12(b)(1)**

Per Rule 12(b)(1), a party may seek the dismissal of an action for lack of subject matter jurisdiction.  In reviewing the motion, "the court is not restricted to the face of the pleadings and may

1  review any evidence, such as declarations and testimony, to resolve factual disputes concerning the

2  existence of jurisdiction." *Edward & Marjorie Austin Unitrust v. U.S. Mortg. Corp.*, 2007 U.S. Dist.

3  LEXIS 72921 (D. Nev. 2007) (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988).

4  The Court must dismiss a case when it lacks subject-matter jurisdiction. *Roberts v. Corrothers*, 812

5  F.2d 1173, 1177 (9th Cir. 1987).  The party invoking the jurisdiction at issue has the burden of proof.

6  *Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).[2]

7  **B.    Motion to Dismiss for Failure to State a Claim per FRCP 12(b)(6)**

8  When hearing a motion to dismiss under Rule 12(b)(6), the Court must consider all the

9  allegations of material fact stated in the complaint as true.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

10  494 F.3d 788 (9th Cir. Cal. 2007).  Further, the Court must construe the facts in the light most

11  favorable to the nonmoving party.  *Id.*  The Court should not dismiss a complaint "unless it appears

12  beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to

13  relief."  *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).

14  **C.    Motion for More Definite Statement**

15  Rule 12(e) provides that a party may move for a more definite statement if the Complaint is so

16  vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made

17  before filing an Answer and it must set out the material defects and the details needed.

18  **IV.    LEGAL ARGUMENT**

19
20  **A.    PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE *ROOKER-FELDMAN* DOCTRINE OR BY PRINCIPLES OF ISSUE AND CLAIM PRECLUSION**

21
22  **1.    Plaintiff's Claims Are Not Barred By *Rooker-Feldman* Abstention**

23  In *Means v. Intelligent Bus. Solutions, Ltd.*, 2015 U.S. Dist. LEXIS 41932 (D. Nev. Mar. 31,

24  2015), Judge Jones of the District of Nevada recognized the argument that an FDCPA claim is barred

25  by *Rooker-Feldman* abstention to be specious.  The *Means* court stated pointedly that

26  _____

   [2] Defendants' Memorandum of Points and Authorities explains that if the *Rooker-Feldman* doctrine is applicable,

27  then the Court must dismiss for lack of subject matter jurisdiction.  *See* ECF No. 10 at pp. 6-10.  As is set forth in more detail below, Plaintiff responds that the *Rooker-Feldman* doctrine does not apply to Plaintiff's causes of action.  The Court

28  has subject matter jurisdiction over this dispute.

"[n]o good faith argument can be made that Defendant's "breach of contract and failure to forward monies owed" claim in the state court affidavit of complaint is identical to either of the FDCPA claims brought here for the purposes of claim preclusion.  [Defendant's] motion to dismiss is denied, and the Court invites Plaintiff to move for fees incurred in defending the present motion under 28 U.S.C. § 1927."

*Means*, 2015 U.S. Dist. LEXIS 41932 at *5.  In other words, the *Means* court concluded that the Defendant's argument that simple FDCPA claims were barred under *Rooker-Feldman* principles was sanctionable as unduly causing multiplicity of federal court proceedings under 28 U.S.C. § 1927.

**PLAINTIFF HEREBY REQUESTS AN AWARED OF FEES AND COSTS UNDER SECTION 1927 FOR HAVING TO DEFEND AGAINST LANGSDALE'S FRIVOLOUS ROOKER-FELDMAN ARGUMENTS.**

Langsdale's unnecessary filings are sanctionable under 28 U.S.C. § 1927.  "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Schutts v. Bently Nevada Corp.*, 966 F. Supp. 1549, 1559 (D. Nev. 1997).

Plaintiff respectfully requests that the reasoning in *Means* be adopted in this case and that Defendants be sanctioned.  Defendants continue to make this discredited argument in case after case and continue to assert in motions to dismiss that Plaintiff's claims are "made in bad faith."[3]  All the while, Defendants' continue to argue out-of-jurisdiction authority for such a proposition. Langsdale's unnecessary filings are sanctionable under 28 U.S.C. § 1927.

There is also abundant authority in the Ninth Circuit and elsewhere that Judge Jones' analysis in *Means* is correct.  In *Garduno v. Autovest LLC*, 143 F. Supp. 3d 923 (D. Ariz. 2015), the Court provided a thorough and persuasive explanation of the development of the *Rooker-Feldman* doctrine and its potential application to FDCPA claims. The Court first pointed out that

[t]he Rooker-Feldman doctrine forbids a losing party in state court from filing suit in federal district court complaining of an injury caused

---

[3] *See* Motion [ECF 10] at pp. 5.

1

2

by a state court judgment, and seeking federal court review and rejection of that judgment.

3  *Id.* at 926 (citing *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013)). The Court stated that the

4  application of this "general rule" requires two steps.  *Id.*  In the first step, the court must decide if any

5  of the claims in the federal case is "a forbidden *de facto* appeal of a state court decision." *Id.* (citing

6  *Bell, supra.*).  If one of Plaintiff's claims is not a "*de facto* appeal," then *Rooker-Feldman* does not

7  apply and the case may proceed. *Id.* If the Court decides that one of Plaintiff's claims is a "*de facto*

8  appeal," the claim constituting that appeal is barred as is any claim "'inextricably intertwined' with the

9

10  state court judicial decision." *Id.* (citing *Bell, supra.*).

11          In *Garduno,* the Court held Plaintiffs' FDCPA claim was not a "*de facto* appeal," because the

12  claim was not "a direct attempt to complain of an erroneous decision by the state court.  *Id.* at 927.

13  The *Garduno* Court pointed out that "for purposes of Plaintiffs' FDCPA claim, **the state court**

14  **judgment is largely irrelevant**." *Id.* (emphasis added).  Plaintiff in *Garduno* alleged "that the

15  FDCPA violation occurred when Defendants filed their state court lawsuit" [and] . . . "the fact that

16  judgment was eventually entered in that case does not directly impact the FDCPA claim." *Id.*  The

17  Court also emphasized that "**Plaintiffs' FDCPA claim is not complaining about the state court**

18  **judgment**." *Id.* (emphasis added).  Plaintiffs' FDCPA claim was based on "an allegedly illegal act"

19  by Defendants. *Id.*  The Court also determined Plaintiffs "were not seeking relief from the state court

20  judgment." *Id.*  Plaintiffs' complaint made it very clear "that the state-court judgment [is] valid" and

21  they are not "attacking the [state court] judgment" nor are they "trying to set it aside." *Id.*  Plaintiffs

22  admitted that the state court judgment stands whether or not Plaintiffs prevailed on their FDCPA

23  claim.  *Id.*  The Court held that the "fact Plaintiffs do not seek to undo the state court judgment

24  strongly supports finding the *Rooker-Feldman* doctrine inapplicable." *Id.*  Finally, the *Garduno* Court

25  concluded that "Plaintiffs [were] not seeking relief from the state court judgment and their FDCPA

26  claim is not a *de facto* appeal. Therefore, the *Rooker-Feldman* doctrine does not bar Plaintiffs' FDCPA

27  claim." *Id.*

28

Similarly, in *Black v. Autovest, LLC,* 2015 U.S. Dist. LEXIS 172141 (D. Ariz. 2015), the Court held Plaintiff's FDCPA claims were not barred by the *Rooker-Feldman* doctrine. The Court stated Plaintiff was not challenging the state court judgment in this federal litigation. Rather, he challenges Defendants' representations at the time Autovest filed the state court action." *Id.* at p. 9. Plaintiff in *Black* also admitted that the state court judgment would stand whether Plaintiffs prevailed on their FDCPA claim. *Id.* Thus, the Court concluded that the *Rooker-Feldman* doctrine "did not bar Plaintiff's claims." *Id.* (citing *Vacation Village, Inc. v. Clark County, Nev.* 497 F.3d 902, 910 (9th Cir. 2007) (*Rooker-Feldman* only applies when the plaintiff assert that its injury was caused by errors in the state court and it seeks a remedy from the state court judgment).[4] The facts in the case at bar are essentially identical the facts in the *Garduno, Black, and Ertz* cases cited above. In this case, Plaintiff's Complaint alleges that ***DEFENDANTS*** committed the "Collection Fee Violations," the "§ 1692(g) Violations," and the Misrepresentation Violation." Plaintiff does not allege that the Court committed any illegal act. Plaintiff does not seek to undo the state court judgment and Plaintiff is not seeking relief from the state court judgment. The FDCPA claim is not a *de facto* appeal and *Rooker-Feldman* does not bar Plaintiff's FDCPA claims.

In support of their arguments, Defendants primarily rely on the 9th Circuit's decision in *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004) and they fail to recognize the import of the Ninth Circuit's more recent decision in *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013).[5] While *Bell* does not expressly overrule *Kougasian*, subsequent decisions make it clear that the *Kougasian* decision is limited, essentially holding that the *Rooker-Feldman* doctrine may not apply to judgments obtained by extrinsic fraud. *See, e.g., Tezak v. Glass*, 2014 U.S. Dist. LEXIS 156866, *10 (C.D. Cal. Oct. 31, 2014). Defendants also fail to recognize the more recent case of *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280 (2005) which provides a "two-step" process for

---

[4] *See also Naranjo v. Universal Sur. of Am.,* 679 F.Supp. 2d 787, 794-796 (S.D. Tex. 2010) (citing various cases holding that the *Rooker-Feldman* doctrine does not bar FDCPA claims based on wrongful conduct of Defendants in process of obtaining judgment); *Ness v. Gurstel Chargo, P.A.* 933 F.Supp. 2d 1156, 1162-63 (D. Minn. 2013) (collecting cases holding that the *Rooker-Feldman* doctrine does not bar an FDCPA claim).

[5] Defendants cite to *Bell v. Boise*, *see* ECF 10 at 8, but for a different proposition.

1   determining whether the *Rooker-Feldman* doctrine bars Plaintiff's claims (it does not bar them).**6**

2   Since Defendants have failed to discuss the most relevant Supreme Court and Ninth Circuit precedent,

3   their arguments are wholly unpersuasive.  Based on the foregoing, Plaintiff submits Defendants'

4   Motion to Dismiss based on the *Rooker-Feldman* doctrine must be denied, and sanctions for

5   multiplicity of proceedings are warranted.

6

7   **2.       Plaintiff's Claims Are Not Prohibited by Claim or Issue Preclusion Principles**

8        Defendants argue that under Nevada law, Plaintiff's claims "are precluded by principles of

9   issue preclusion and claim preclusion" according to *Clark v. Clark*, 80 Nev. 52, 55-56 (1964).

10   Defendants asserts claim preclusion precludes the parties from relitigating what is substantially the

11   same cause of action from state court proceedings.  *Id.*  Defendants also assert that issue preclusion

12   may apply to bar certain causes of action, even if the causes of action are substantially different.  *Id.*

13   Defendants assert that if the "same fact issue" is presented in the first case, it cannot be litigated in the

14   second case.  As Judge Jones made clear in *Means*, however, FDCPA issues are distinct from the

15   state-court issues litigated in a collections matter.  *Means*, 2015 U.S. Dist. LEXIS 41932 at *4-*5.

16        In support of their argument, Defendants cite NRCP 13(a) and assert that Plaintiff's current

17   claims were compulsory counterclaims that had to be litigated in the collection matter brought by

18   Defendants against Plaintiff.  However, Defendants have failed to cite any case law that supports their

19   contention that FDCPA claims are compulsory counterclaims.

20        Many Courts have held that FDCPA claims are not "compulsory counterclaims." In *Mostin v.*

21   *GL Recovery, LLC*, 2010 U.S. Dist. LEXIS 21931 (C.D. Cal. Feb. 19, 2010) the parties disputed

22   whether a FDCPA counterclaim is compulsory. The Court held Defendant's counterclaim was

23   permissive. *Id.* at pp. *6-8. In so holding, the Court pointed out:

24             [A]lthough the Ninth Circuit has not specifically decided whether a
25             counterclaim for the underlying debt in an FDCPA action is
               compulsory or permissive, most, if not all of the district courts within
26             the Ninth Circuit . . . have determined that such a counterclaim is

27        _____
          **6** Again, Defendants cite to *Exxon Mobil* but do not address it in the context of Plaintiff's
          argument, choosing instead to sidestep the analysis.  *See* ECF 10 at 7.

28

permissive. *Marlin v. Chase Cardmember Servs.*, 2009 U.S. Dist. LEXIS 45189, at \*8, 2009 WL 1405196, \*3 (E.D. Cal. 2009). Marlin is correct. Numerous courts have held that a claim to collect an alleged debt [\*7] underlying an FDCPA claim is not a compulsory counterclaim to the FDCPA claim. See, e.g., *Randall v. Nelson & Kennard*, No. CV-09-387-PHX-LOA, 2009 U.S. Dist. LEXIS 81896, 2009 WL 2710141 at \*4 (D. Ariz, Aug. 25, 2009); *Avery v. First Resolution Mgmt. Corp.*, No. 06-1812-HA, 2007 U.S. Dist. LEXIS 39260, at \*15 (D. Or. May 25, 2007), aff'd 561 F.3d 998 (9th Cir. 2009); *Barcena v. Tam Fin. Corp.*, EP- 07-CA-0020-KC, 2007 U.S. Dist. LEXIS 38674, at \*8 n.2 (W.D. Tex. May 8, 2007); *Bakewell v. Fed. Fin. Group, Inc.*, NO. 1:04-CV-3538-JOF, 2006 U.S. Dist. LEXIS 23073, 2006 WL 749807, at \*2 (N.D. Ga. Mar. 21, 2006); *Sparrow v. Mazda Am. Credit*, 385 F.Supp.2d 1063, 1069 (E.D. Cal. 2005); *Campos v. W. Dental Servs., Inc.*, 404 F.Supp.2d 1164, 1168-69 (N.D. Cal. 2005); *Moore v. Old Canal Fin. Corp.*, No. CV05-205-S-EJL, 2006 U.S. Dist. LEXIS 21700, 2006 WL 851114, at \*3 (D. Idaho Mar. 29 2006); *Hart v. Clayton-Parker & Assocs.*, 869 F. Supp. 774, 777 (D. Ariz. 1994); *Peterson v. United Accounts, Inc.*, 638 F.2d 1134 (8th Cir. 1981).

The *Mostin* Court was particularly persuaded by the Eighth Circuit case *Peterson*, which explained:

> While the debt claim and the FDCPA counterclaim raised here may, in a technical sense, arise from the same loan transaction, the two claims bear no logical relation to one another. Although there is some overlap of issues raised in both cases as a result of the defenses raised in the state action, the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts.

*Id.*

Judge Jones ruled in *Means* that "the doctrine of claim preclusion" does not require the dismissal of an FDCPA claim. *Means*, 2015 U.S. Dist. LEXIS 41932 at \*4-\*5. In so holding, the Court noted that "Plaintiff has not sought any declaration from this Court that would countermand or undermine the judgment of the state court as to the sole claim brought in that court for breach of contract." *Id.* The Court also noted Plaintiff did not ask the Court "to review the state court ruling…" or seek any form of relief that "would conflict in any way with the state court judgment entered against him for breach of contract." *Id.* The Court found that the FDCPA action was based on a federal statute "prohibiting certain collection practices." *Id.* Thus, the Court concluded that "nothing

1   about the state court judgment precludes Plaintiff from asserting a FDCPA claim based on Defendant's

2   attempt to collect $2501.13 in collection costs…." *Id.*

3      The facts in the case at bar are essentially indistinguishable from the facts in *Means* and the

4   cases cited above.  Plaintiff's Complaint alleges that **DEFENDANTS** committed the "Collection Fee

5   Violations," the "§ 1692(g) Violations," and the "Misrepresentation Violation."  Plaintiff seeks the

6   remedies available under the FDCPA.  Plaintiff does not seek to countermand or undermine the

7   judgment of the state court.  Plaintiff is not seeking any form of relief that would conflict in any way

8   with the state court judgment.  Plaintiff's FDCPA claims are based on a federal statute prohibiting

9   certain collection practices. Also, Plaintiff's FDCPA claims are not logically related to the state court

10  judgment.  Plaintiff's claims relate to the way Defendants attempted to collect the Debt and do not

11  concern whether a valid debt existed between the parties.  Thus, nothing about the state court

12  judgment precludes Plaintiff from asserting FDCPA claims based on the "Collection Fee Violations,"

13  the "§ 1692(g) Violations," and the "Misrepresentation Violation."

14     With respect to issue preclusion, Defendants assert baselessly that Plaintiff's claims are barred

15  because "they raise an issue of the propriety of certain elements of damages in the underlying

16  proceeding as they relate to the enforceability of relevant contract provisions in the state court action."

17  Defendants claim that "these exact issues were raised in the state court action and that the state court

18  entered a ruling and final judgment on the merits."  As is set forth below, Defendants' arguments are

19  without merit.

20     In *Howard v. Sandoval*, 232 P.3d 422, 423-24 (Nev. 2010), the Supreme Court responded to a

21  certified question from the United States Bankruptcy Court for the District of Nevada. Specifically,

22  the Bankruptcy Court questioned "whether the default judgment entered against the respondent debtor

23  for failure to file an Answer had issue preclusive effect in a proceeding brought by Appellant-

24  Assignee to determine the dischargeability of the debt embodied in the judgment." *Id.*

25     The *Howard* court stated "issue preclusion prevents relitigation of an issue decided in an

26  earlier action" even if the second action is based on different causes of action and circumstances." *Id.*

27  (citing *Five-Star Capital Corp. v. Ruby*, 124 Nev. 1048 (2008)). The Court stated that four factors

28  must be met for issue preclusion to apply: (*1*) *the issue decided in the prior litigation must be identical*

1   to the issue presented in the current action; (2) the initial ruling must have been on the merits and

2   have become final;(3) the party against whom the judgment is asserted must have been a party or in

3   privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated.

4          The Court noted that many courts are "divided on whether and when a default judgment can

5   have a preclusive effect." *Id.* at 139-140.  In deciding that a default judgment does not have a

6   preclusive effect for purposes of issue preclusion, the Court noted that although issue preclusion

7   avoids relitigation and conserves judicial resources, for the doctrine to apply, an issue must have been

8   "actually and necessarily litigated."  Thus, the Court concluded that "Nevada's issue-preclusion test

9   requires that an issue be 'actually litigated' and not simply that a party had an opportunity to litigate

10  the issue. *Id.* at 141.  Accordingly, the Court held that "[w]hen a default judgment is entered where an

11  answer has not been filed, the issue presented was not actually and necessarily litigated, and issue

12  preclusion does not apply in such circumstances."

13         Similarly, in *Jenkins-Brown v. Liberty Acquisitions Servicing, LLC*, 2015 U.S. Dist. LEXIS

14  125044 (D. Or. July 29, 2015), the Court held that a default judgment in a collection case could not

15  serve as a basis for issue preclusion in Plaintiff's FDCPA case.  In so holding, the Court stated that

16  "[n]one of the issues litigated and reduced to the default judgment in state court involved the Debt

17  Collector's debt collection practices which are at issue here." *Id.* at *16-*19.  The Court noted

18  Plaintiff alleged Defendant violated the FDCPA "by repeatedly sending her and other class members

19  collection letters which demanded contractual interest that it was not entitled to collect." *Id.*  The

20  Court also noted Defendant "reiterated those false representations in state court complaints, often

21  resulting in default judgments that incorporated the amount of unlawful interest." *Id.*  The Court

22  found that a **prior state court action did not establish the terms of the agreement between**

23  **Plaintiff and the original creditor**, including whether the original creditor or Defendant Debt

24  Collector could collect interest from Plaintiff. *Id.* (emphasis added).  Nevertheless, the Debt Collector

25  attempted to collect interest from Plaintiff. *Id.*  Thus, Plaintiff filed her FDCPA action. *Id.*  The Court

26  held that whether the Debt Collector falsely asserted its right to collect interest had no relation to the

27  default judgment and that fact that the Debtor obtained a default judgment was not relevant to the

28  FDCPA claim. *Id.*  Thus, the Court held that "there is simply no identity of issues between Plaintiff's

1   FDCPA claim in this case and the underlying state court default judgment to permit issue preclusion."

2   *Id.*

3       Like the default judgment debtors in *Howard* and *Jenkins-Brown,* Plaintiff in the case at bar is

4   asserting claims that are unrelated the Default Judgment obtained by Defendants in state court.

5   Plaintiff's claims based on the "Collection Fee Violations," the "§ 1692(g) Violations," and the

6   "Misrepresentation Violation" were not litigated when Defendants obtained their default judgment

7   against Plaintiff.  Accordingly, the Default Judgment cannot serve as a basis for any valid claim of

8   issue preclusion.  Thus, Defendants' Motion to Dismiss based on issue and claim Preclusion must be

9   denied.

10      **B.      DEFENDANTS' ARGUMENT THAT PLAINTIFF'S ABUSE OF PROCESS
                CLAIM FAILS AS A MATTER OF LAW IS WITHOUT MERIT.**

11

12      Defendants' claim that Plaintiff's Abuse of Process claim "fails as a matter of law given

13  Plaintiff's own facts."  The Defendants go so far as to say that "Plaintiff's own facts demonstrate the

14  frivolity of his abuse of process claim."[7]  Yet, it is clear that Defendant's arguments are based on

15  an oversimplistic analysis, and a rudimentary application of the law regarding abuse of process

16  claims.

17      Per *LaMantia v. Redisi*, 38 P.3d 877, 886 (Nev. 2002), Plaintiff has alleged: (1) an ulterior

18  purpose by Defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal

19  process not proper in the regular conduct of the proceeding."  According to Defendants' rudimentary

20  approach, they simply filed a lawsuit to collect money that is owed by Plaintiff to Defendants.

21  Defendants seem to question how could those simple actions amount to an abuse of process.

22      Plaintiff knows that there is more to the analysis than Defendants have described and there are

23  many cases where Debt Collectors have been held liable for abuse of process. For example, in

24  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) a jury found in

25  favor of Plaintiff and awarded him the $1,000 statutory maximum for violations of the FDCPA;

26  $250,000 for emotional distress; and $60,000 in punitive damages.  In his complaint, Plaintiff asserted

27  _____

        [7] ECF 10 at p. 13.

28

1 claims for violations of the FDCPA, the Montana Unfair Trade Practices and Consumer Protection

2 Act ("MCPA"), along with state law claims for malicious prosecution and abuse of process. *Id.*

3 Defendants appealed the jury verdict to the Ninth Circuit and the Ninth Circuit affirmed.

4 On the abuse of process claim, the Court applied Montana law which provides that a claim for

5 abuse of process consists of two elements: "(1) an ulterior purpose; and (2) a willful act in the use of

6 the process not proper in the regular conduct of the proceeding."[8] *Id.* at 956-57. On cross-motions for

7 summary judgment, the Court ruled that these facts had been established (the "Established Facts"):

8 (1) On April 17, 2007, Defendant filed a time-barred lawsuit against Plaintiff.

9 (2) By August 6, 2007, Defendant knew that the lawsuit was time-barred.

10 (3) Defendant prosecuted the time-barred lawsuit until December 7, 2007.

11 *Id.* at 947. The Court found that Plaintiff had produced sufficient evidence to sustain his abuse of

12 process claim. *Id.* The Court found that the Established Facts demonstrated Defendant "willfully

13 filed a lawsuit 'with an ulterior purpose of extracting money from the [Plaintiff]…,' and Defendant

14 'had no valid legal claim against Plaintiff and knew it, but filed an action . . . nonetheless.'" *Id.*

15 The Court further found that "substantial evidence supported the jury's finding of liability on

16 [the abuse of process] claim." *Id.* at 956-57. Plaintiff presented evidence that: (1) Defendant filed suit

17 "to extract money from Plaintiff that it could not legally obtain in a collection action and that it filed a

18 baseless action with knowledge that it had no legal claim;" (2) Defendant "filed and pursued a time-

19 barred lawsuit against him, even though Defendant's own electronic file indicated that the suit was

20 time-barred;" (3) "Defendant continued to prosecute the collection case for four months after having

21 been explicitly told" by the creditor that there were no grounds for extending the statute of limitations;

22 (4) Defendant "sought attorney's fees without confirming that [Plaintiff] had a contractual fee

23 obligation. *Id.* The Court held that based on the evidence the jury could infer Defendant's purpose in

24 filing the lawsuit was to coerce [Plaintiff] to pay awards and fees to which it and the creditor were not

25 entitled. *Id.* The Court held that the "jury's abuse of process verdict was supported by substantial

26 evidence, and the district court properly denied Defendants' motion for judgment as a matter of law."

27

28

---

[8] These elements are essentially the same as the elements set forth in *LaMantia; supra.*

Considering the facts and allegations in the light most favorable to Plaintiff, in this case there is evidence that indicates that Defendants are liable for abuse of process. **_DEFENDANTS_** willfully and knowingly charged unlawful collection charges equal to 50% of the principal amount. In this regard, the Defendants' Application for Default Judgment (and Defendants' Memorandum of Law) shows that the contractual collection fee was equal to 50% of the principal balance of The Debt.

In addition, Plaintiff alleges that § 1692(g) of the FDCPA requires that debt collectors provide debtors with written notice of the Debt; and notice of the Debtor's right to verify the Debt (the "Validation Notice"). Plaintiff further alleges **_DEFENDANTS_** unlawfully failed to provide the Validation Notice; and **_DEFENDANTS_** failed to notify Plaintiff that the alleged amount owed by Plaintiff included a collection fee equal to 50% of the principal balance of the Debt.

Considering the foregoing in the light most favorable to Plaintiff, there is evidence that indicates Plaintiff can provide "substantial evidence to support a jury's finding of liability on its abuse of process claim." Plaintiff's allegations/facts indicate Defendants filed suit "to extract money from Plaintiff that it could not legally obtain in a collection action and they pursued excessive collection charges even though they knew the charges violated the law. Considered in a favorable light, Plaintiff submits that, based on the outcome of the _McCullogh_ case, it is possible that a jury could enter an award in favor of Plaintiff. Thus, Plaintiff respectfully submits that his abuse of process claim should not be dismissed.

## C.     PLAINTIFF'S ALLEGATIONS UNDER NRS CHAPTER 598 ARE PROPERLY PLEADED

Defendants contend that Plaintiff must be bringing his Deceptive Trade Practices ("DTP") claim based on Nev. Rev. Stat. 598.0923, which allows a plaintiff to recover from a person who "knowingly [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services.[9] Defendants further assert that Plaintiff's claim under the DTP must be premised on his FDCPA claims (or apparently cannot succeed) and must additionally relate to the sale or lease of

---

[9] _See_ Defendants' Motion at 14-16.

goods and services.[10]  Having unilaterally set these assumed preconditions for Plaintiff's DTP claim, Defendants goes on to declare that it is "abundantly clear that the FDCPA does not relate to the purchasing or leasing of goods and services."[11]

Plaintiff does not agree that his DTP claim must be brought under Section 598.0923.  Several DTP provisions seem to apply to Plaintiff's situation.  Plaintiff is a "consumer" pursuant to the NRS Chapter 598 Deceptive Trade Practices.  Additionally, Plaintiff's DTP claim would certainly allege that "Defendants engaged in unfair or deceptive acts or practices in the conduct of its commerce or trade through its unfair and deceptive debt collection and litigation activities in violation of NRS Chapter 598."  Further, Defendants' violations of NRS Chapter 598 include, but are not limited to:

A.  NRS 598.0915(15): Knowingly makes any other false representation in a transaction.

B. NRS 598.0923(2): Fails to disclose a material fact in connection with the sale or lease of goods or services.

C. NRS 598.0923(3): Violates a state or federal statute or regulation relating to the sale or lease of goods or services.

Notably, Plaintiff contends that Defendants violated both NRS 598.0923(2) and NRS 598.0923(3). Both of these subsections involve "the sale or lease of goods or services."

However, Defendants' categorical assertion that the FDCPA does **not** relate to the sale or lease of goods or services is unfounded.  Just because the FDCPA regulates "debt collection practices" does not exclude "the sale or lease of goods or services" from its wide reach.  *See Clark v. Capital Credit*, 460 F.3d 1162, 1176-78 (9th Cir. 2006) (explaining that the FDCPA is a" remedial statute" which "should be interpreted liberally in favor of the consumer" and that the FDCPA was drafted by

---

[10] *See id.*

[11] *See id.*

Congress "to be both explicit and comprehensive, in order to limit the opportunities for debt collectors to evade the underlying legislative intention.") (quotations omitted).   Plaintiff's DTP claims are necessarily based on the factual allegations in this case, which relate to the purchase of services.   Mr. Cutts purchased medical services, bringing her claims within the wide ambit of the FDCPA as well as the DTP.   *See Clark,* 460 F.3d at 1166-67 (applying FDCPA to debt arising from mental health services provided to consumer by her former doctor*).  See also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (explaining that FDCPA explicitly includes an alleged obligation to pay money arising out of a transaction [for] . . .services).

Defendants' citation to *Peatrowsky v. Persolve*, 2014 U.S. Dist. Ct. LEXIS 38320, *5 (D. Nev. Mar 24, 2014) for the proposition that "consumers may not borrow the FDCPA to allege a claim under DTPA" is stating purported law based on an unopposed argument in an unpublished order, which is hardly authoritative.   This *Peatrowsky* proposition is also inconsistent with the FDCPA's broad contruction to protect consumers and the FDCPA's clear application to the sale of medical services. *See Clark,* 460 F.3d at 1166-67, 1176-77.  Defendants' overly-narrow argument that Plaintiff cannot bring claims under both the FDCPA and the DTPA for the same factual allegations must fail. Defendants' request that Plaintiff's DTP claim be dismissed should be denied.


### D.   DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CIVIL CONSPIRACY CLAIM MUST BE DENIED.

Defendants' Motion to Dismiss Plaintiff's Civil Conspiracy claim is based on Defendants' unfounded assumption that all of Plaintiff's other claims will be dismissed.[12]  Plaintiff respectfully submits that this Opposition to Defendants' Motion makes it clear that Plaintiff's claims will not be dismissed. Given that Defendants' assumption is incorrect, their motion to dismiss Plaintiff's Civil Conspiracy Claim must be denied.

---

[12] ECF 10 at 17-18.

E.   **PLAINTIFF'S CLAIM FOR NEGLIGENT MISREPRESENTATION IS PROPERLY STATED TO OVERCOME DEFENDANTS' MOTION TO DISMISS**

1.   **Plaintiff's Claim For Misrepresentation Is Sufficiently-Pleaded**

Defendants' collective misrepresentation to the state court is adequately-pleaded to satisfy Rule 9.  As detailed in the Complaint [ECF 1] at ¶¶ 16-22, the Defendants together submitted a Declaration of Dr. Molin to the state court in support of a default judgment.  Presumably, Dr. Molin originated the false information in his Declaration and the other Defendants treated it as true and represented it as fact to the state court.  The who, what, when, where, how, and why aspects of pleading fraud-related claims under Rule 9 have been satisfied.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  The misleading Declaration contained false information and caused the default judgment against Mr. Cutts to be granted, causing damages to Mr. Cutts.  The negligent misrepresentation claim must stand.

2.   **Plaintiff Seeks Relief On His Own Behalf, Not on the State Court's Behalf**

Defendants hypothesize that Plaintiff may be "seeking relief on the State court's behalf.  To the extent that he is, Plaintiff does not have standing to pursue any claims on behalf of the State Court." [13]  As discussed at length with respect to the inapplicability of the *Rooker-Feldman* abstention doctrine, above, Plaintiff does not seek to challenge any aspect of the State Court's ruling.  Nor does Plaintiff claim to speak for the state court, as Defendants appear to suggest.

3.   **Plaintiff Justifiably Relied on Defendants' Misrepresentation**

Arguing that Plaintiff did not justifiably rely on the misrepresentation, Defendants contend that Mr. Cutts' misrepresentation claim, whether knowing or negligent, cannot succeed.[14]  Here, Plaintiff may not have participated in the justice court proceedings, but he certainly bears the consequences of the false statement made and ratified by the Defendants as true in submitting it to the court.  For the

---

[13] ECF 10 at 19.

[14] ECF 10 at 19-20.

same reason that a default judgment is not "actually and necessarily litigated" for purposes of issue or claim preclusion, *see Howard* and *Jenkins-Brown* discussed supra in Section IV, A, 2, a default judgment does not defeat reliance here.  Plaintiff is asserting claims that are unrelated to the default judgment.  Moreover, to the extent that Defendants are arguing that the misleading statement was never communicated to Plaintiff so that he could rely on it, Plaintiff was served with the misleading statement, *see ECF 10 at 44-45,* which constitutes a communication to Plaintiff.  *See Donohue v. Quick Collect, Inc.,* 592 F. 3d 1027, 1032 (9th Cir. 2010).  The terms of the debt and added charges were not clear in the papers served on Plaintiff, and he certainly could have justifiably relied on the misrepresentation.  The elements of misrepresentation are satisfied here.

## F.   PLAINTIFF DOES NOT OBJECT TO DEFENDANTS' REQUEST FOR A MORE DEFINITE STATEMENT

Since Plaintiff has requested leave to amend his complaint, Plaintiff does not object to Defendants' request for a more definite statement. Plaintiffs will make a good faith effort to address Defendants' concerns in the proposed First Amended Complaint.

## V.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied.

DATED this 10th day of July, 2017.

THE LAW OFFICE OF VERNON NELSON

By:      */s/Vernon Nelson*
VERNON NELSON, ESQ.
Nevada Bar No.: 6434
MARGARET G. FOLEY, ESQ.
Nevada Bar No.:  7703
9480 S. Eastern Avenue, Suite 244
Las Vegas, NV   89123
Tel:  702-476-2500
Fax:  702-476-2788
E-Mail:  vnelson@nelsonlawfirmlv.com
*Attorneys for Plaintiff Michael Cutts*